

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00003-CR

IN RE THE STATE OF TEXAS EX REL. REID MCCAIN

Original Mandamus Proceeding

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Chief Justice Stevens
Dissenting Opinion by Justice Rambin

# OPINION

Relator Reid McCain, in his capacity as Harrison County district attorney and on behalf of the State, has petitioned this Court for mandamus relief. McCain asks this Court to direct Respondent, the Honorable Brad Morin, presiding judge of the 71st Judicial District Court of Harrison County, to rescind his order requiring the State to provide a copy of a recorded forensic interview of an alleged child victim to Real Party in Interest Lorenza Cooper, Jr. Because (1) the State has no remedy by way of appeal and (2) the Texas discovery statutes make clear that recorded interviews given by alleged child victims of sexual abuses may not be duplicated, we conditionally grant the writ of mandamus.

## I. Background

Cooper was indicted in Harrison County for two counts of aggravated sexual assault of a child.[1] In pretrial hearings, Cooper asked the trial court to order the State to provide a copy of the forensic interview of the alleged child victim. The State protested that such duplication was specifically prohibited by Texas law. Cooper explained that the duplication request was made for the convenience of his consulting expert, who apparently does not reside or practice in Harrison County. Cooper also argued that, if the expert were required to review the interview at the prosecutor's office, this would divulge the expert's identity.

## II. Mandamus Review

To be entitled to mandamus relief, the relator must show (1) "that he has no adequate remedy at law" and (2) that the action "he seeks to compel is ministerial . . . , not [one] involving

---

[1]*See* TEX. PENAL CODE ANN. § 22.021(a)(2)(B).

a discretionary or judicial decision." *State ex rel. Young v. Sixth Jud. Dist. Court of Appeals at Texarkana*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding). This second requirement may be alternatively stated as requiring the relator to demonstrate "a clear and indisputable right to the relief sought." *State v. Patrick*, 86 S.W.3d 592, 594 (Tex. Crim. App. 2002) (orig. proceeding). "The relief sought must be 'clear and indisputable' such that its merits are 'beyond dispute.'" *State ex rel. Hill v. Ct. of Appeals for Fifth Dist.*, 34 S.W.3d 924, 927–28 (Tex. Crim. App. 2001) (orig. proceeding) (quoting *State ex rel. Wade v. Mays*, 689 S.W.2d 893, 897 (Tex. Crim. App. 1985) (orig. proceeding)). "The act must be 'positively commanded and so plainly prescribed' under the law 'as to be free from doubt.'" *State ex rel. Hill*, 34 S.W.3d at 928 (quoting *Buntion v. Harmon*, 827 S.W.2d 945, 949 (Tex. Crim. App. 1992) (orig. proceeding)). A requested act is only subject to extraordinary relief where "the law clearly spells out the duty to be performed by an official and does so with such certainty that nothing is left to the exercise of discretion or judgment." *Tex. Dep't of Corrs. v. Dalehite*, 623 S.W.2d 420, 424 (Tex. Crim. App. 1981) (citing *Forbes v. City of Houston*, 356 S.W.2d 709, 711 (Tex. App.— Houston [1st Dist.] 1962, no writ)).

### A.    No Adequate Remedy at Law

First, the State has no remedy by way of appeal. The State can only appeal certain actions by the trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 44.01. A violation of the discovery statutes is not included in these limited actions. *Id.*[2] If Respondent's order is

---

[2] "[T]he limitations in Article 44.01 on the State's right to appeal are no impediment to the State's use of mandamus to correct judicial action *that is clearly contrary to well-settled law*, whether that law is derived from a statute, rule, or opinion of a court." *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 774 (Tex. Crim. App. 1994) (orig. proceeding).

enforced, the State cannot challenge that order on direct appeal. "Because the State cannot appeal the trial court's order in this case, the State has no remedy other than a writ of mandamus. Thus, we move to the second question, whether the State has a clear and indisputable right to the relief sought." *Patrick*, 86 S.W.3d at 594.

### B.    Clear Right to Relief

The Texas discovery statutes make clear that recorded interviews given by alleged child victims of sexual abuses may not be duplicated. Article 39.14 of the Texas Code of Criminal Procedure, while generally providing access to, including duplication of, many evidentiary materials in the State's possession, specifically states that it is "[s]ubject to the restrictions provided by Section 264.408, Family Code, and Article 39.15 of [the Texas Code of Criminal Procedure]." *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(a).

Article 39.15 of the Texas Code of Criminal Procedure governs "Discovery of Evidence Depicting or Describing Abuse of or Sexual Conduct By [a] Child or Minor." TEX. CODE CRIM. PROC. ANN. art. 39.15. Article 39.15(c) plainly prohibits a trial court from allowing the duplication of evidentiary materials described in that statute. It provides, "A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce any property or material described by Subsection (a), provided that the state makes the property or material reasonably available to the defendant." TEX. CODE CRIM. PROC. ANN. art. 39.15(c). Article 39.15 applies to property or evidentiary materials containing or related to the promotion or possession of child pornography, and any property or materials "described by Section 2 or 5, Article 38.071, of [the Texas Code of Criminal Procedure]." TEX. CODE CRIM. PROC. ANN. art.

4

39.15(a)(3). Article 38.071 addresses "the recording of an oral statement of the child" alleged to be a victim of sexual or aggravated sexual assault, as well as other enumerated offenses. TEX. CODE CRIM. PROC. ANN. art. 38.071, § 2(a).

For purposes of the instant petition, the Texas Code of Criminal Procedure prohibits the duplication of evidentiary materials containing, *inter alia*, "[t]he recording of an oral statement of the child" alleged to be a victim of sexual or aggravated sexual assault, as well as other enumerated offenses. TEX. CODE CRIM. PROC. ANN. art. 38.071, § 2(a).

Similarly, Section 264.408 of the Texas Family Code also contains specific prohibitions against reproducing electronic recordings of interviews with children. TEX. FAM. CODE ANN. § 264.408 (Supp.). Section 264.408(d) provides, "An electronic recording of an interview with a child or person with a disability that is made by a center is the property of the prosecuting attorney involved in the criminal prosecution of the case involving the child or person." TEX. FAM. CODE ANN. § 264.408(d). Then, Section 264.408(d-1) provides,

> (d-1)   An electronic recording of an interview described by Subsection (d) is subject to *production* under Article 39.14, Code of Criminal Procedure, and Rule 615, Texas Rules of Evidence.[3]  A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce an electronic recording of an interview described by Subsection (d), provided that the prosecuting attorney makes the electronic recording reasonably available to the defendant in the same manner as property or material may be made available to defendants, attorneys, and expert witnesses under Article 39.15(d), Code of Criminal Procedure.

TEX. FAM. CODE ANN. § 264.408(d-1) (emphasis added).

---

[3]Rule 615 is entitled "Producing a Witness's Statement in Criminal Cases." TEX. R. EVID. 615.

Although Article 39.15 clearly prohibits the kind of duplication and dissemination ordered here by the trial court, it does provide that "a court should make a child victim's forensic interviews reasonably available for inspection, but should not allow the defendant's team to copy them." *Gonzalez v. State*, 522 S.W.3d 48, 58 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Here, the State made the interview available for Cooper's counsel. In fact, at the hearing on the State's motion to reconsider the trial court's order to copy and produce the video recording, Cooper's trial attorney told the court he had already viewed the recorded interview. This is what Article 39.15(c) requires. The statute permits nothing further as regards any duplication or reproduction.

Respondent directs us to *In re District Attorney's Office of the 25th Judicial District*, 358 S.W.3d 244 (Tex. Crim. App. 2011) (orig. proceeding) (order). There, the trial court had ordered the State "to make a copy of the [Children's Advocacy Center's (CAC) interview] recording for the defendant's counsel." *Id.* at 245. The Texas Court of Criminal Appeals found the trial court's order within its discretion and "supported by the . . . authority" of Article 39.14(a). *Id.* at 246. However, that case pre-dates the current version of Article 39.15.[4] The 2011 amendment extended Article 39.15's prohibition on duplicating discovery materials to include recorded statements of child complainants made before the filing of an indictment. Such statements include what are commonly referred to as CAC statements, or forensic interviews of children who may have been victims of abuse. *See* TEX. CODE CRIM. PROC. ANN. art. 38.071, § 2(a).

---

[4]*See* Act of May 27, 2011, 82d Leg., R.S., ch. 1322, §§ 9–10, 2011 Tex. Gen. Laws 3825, 3828.

6

The trial court assured the State that its order would not be a standing discovery order in that court. The trial court's order was based on the situation at bar and made to "save the county money," perhaps "several thousand[] . . . dollars" to review a one-hour, recorded interview. We certainly applaud that rationale. But unfortunately, the trial court's hands were tied by explicit legislation. Addressing a different discovery argument, the Texas Court of Criminal Appeals remarked, "That it might be more convenient in facilitating that consultation for a defendant to be able also 'to have copies' of those materials does not mean that a legislative ban on obtaining copies violates either due process or the right to the effective assistance of counsel." *Powell v. Hocker*, 516 S.W.3d 488, 497 n.15 (Tex. Crim. App. 2017) (orig. proceeding).[5] While no constitutional argument is before us, we note this language simply to point out that convenience is not a sufficient reason to side-step a clear statutory prohibition.

Because the law prohibits the copying and production of the CAC interview recording, we find that the State is entitled to the mandamus relief it seeks. As a result, we conditionally grant the petition for a writ of mandamus and direct the trial court to rescind its order for copying and production of the CAC interview recording. We are confident the trial court will comply with this opinion, and the writ will issue only in the event it does not. *See* TEX. R. APP. P. 52.8.

Scott E. Stevens
Chief Justice

---

[5]Relator Powell was a district attorney seeking to compel Respondent Hocker, a county court at law judge, to vacate the court's order allowing a defendant to obtain copies of discovery materials in violation of Article 39.14(f) of the Texas Code of Criminal Procedure. *Powell*, 516 S.W.3d at 496. *See* TEX. CODE CRIM. PROC. ANN. art. 39.14(f) (Supp.). The Texas Court of Criminal Appeals conditionally granted Powell's petition. *Powell*, 516 S.W.3d at 497.

7

DISSENTING OPINION

On mandamus, we are faced with the question of whether "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen v. Carnes*, 343 S.W.3d 805, 810 (Tex. Crim. App. 2011) (orig. proceeding) (quoting *State ex rel. Young v. Sixth Jud. Dist. Ct. of Appeals*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007) (orig. proceeding)). That is the "ministerial act" standard. *Id.*

In my view, the petitioner did not meet that standard.

Perhaps mandamus could one day be a matter of "both . . . and" instead of "either . . . or." Which is to say that to my mind, this could well be a case where the trial court did not abuse its discretion, though, ultimately, a higher court could find that the trial court relied on an erroneous interpretation of the law. As things stand, and in such a case, the ministerial act standard puts intermediate courts of appeal on the horns of a dilemma. Either we afford the trial court wide discretion, even discretion to rely on an erroneous interpretation of the law, or we provide a proper interpretation of the law and, in so doing, declare that the trial court has abused its discretion. To me, neither option seems quite fitting here. If we had the option both to find that the trial court acted within its discretion and, even so, to proceed to provide a proper interpretation of the law for use in future cases, then I might well have joined the majority.

The top-level question here is whether the trial court could have made more than one rational decision. In conjunction with that top-level question are the embedded subsidiary questions within the ministerial act standard, such as whether the law in this area is equivocal or

8

unsettled. On matters of statutory interpretation, the ministerial act inquiry can, but does not always, produce a different result from a statutory interpretation inquiry as might be conducted on regular appeal. Both involve assessing the rules of statutory interpretation implicated by the question at hand. Both involve assessing the prior judicial precedents regarding the statute(s) at issue. For inferior courts such as intermediate courts of appeal, and the trial court, part of the process of assessing precedents includes viewing the decisions of higher courts in light of the duty of obedience. Where the processes differ is in "one rational decision" and its subsidiary inquiries. Completing the statutory interpretation process is not required to complete the ministerial act inquiry. If, along the path of statutory interpretation on mandamus review, it becomes apparent that more than one rational choice was available to the trial court, then the journey has reached its end and must stop. Stop, even without coming to a final conclusion on the interpretation of the statute. Because, to proceed with interpreting the statute, and to then look back with hindsight and its inherent bias on the decision of the trial court would, in practical effect, eliminate the discretion afforded to the trial court. This is not to say that any grant of mandamus is inherently a matter of hindsight. In a given mandamus case, it is entirely possible to start down the trail of statutory interpretation, to discover no rational forks in the road, and therefore to proceed with full and final interpretation of the statute.

This case involves four statutes and a rule bearing on the production of recordings of child interviews in sexual assault cases, particularly interviews conducted under the auspices of a Children's Advocacy Center. TEX. CODE CRIM. PROC. ANN. art. 38.071, art. 39.14 (Supp.), art. 39.15; TEX. FAM. CODE ANN. § 264.408, TEX. R. EVID. 615.

9

The question is whether—when those statutes are viewed through the lens of the mandamus standard—and through the additional lens of the duty of inferior courts to follow the decisions of the Court of Criminal Appeals—the trial court had discretion to avoid the expense of a taxpayer-provided defense expert traveling for an on-site review of the recording by ordering that the prosecutor copy the video recording and send it to the defense expert.[6] That was the decision made by the trial court.

There was a time when trial courts unmistakably had discretion to order the recordings to be copied. That was by virtue of a 2011 decision of the Texas Court of Criminal Appeals based on then-current laws. There have been several statutory changes since then. After those changes, the Court of Criminal Appeals considered the question of video recordings again but did not issue a precedential decision. Since 2011, the Court of Criminal Appeals also issued precedential decisions that addressed statutes bearing on the question at hand. One of the statutes at issue was thereafter amended yet again. The end result, in my view, is that more than one rational choice was open to the trial court.

I.      Timeline

The sequence of events in this case implicates a welter of rules of statutory interpretation. Before addressing the rules of statutory interpretation, a review of the judicial decisions and statutes is helpful.

---

[6]Under a protective order that subjects the defense expert to punishment by the court if the recording is mishandled.

**A.      March 2011:  Trial Court Authority to Order Copying Affirmed**

To begin with, there was precedent for trial courts having discretion regarding the manner of production of recordings of child interviews in sexual assault cases.  On March 30, 2011, the Court of Criminal Appeals addressed a trial court order requiring the State to make a copy of a Child Advocacy Center recording for review by defense counsel in a sexual assault case.  *In re Dist. Att'y's Off. of 25th Jud. Dist.*, 358 S.W.3d 244, 245 (Tex. Crim. App. 2011) (orig. proceeding).[7]  In that case, the Court of Criminal Appeals found that trial courts had discretion to permit copying.  *Id.* at 246 ("The [trial] court's order for the State to make the copy, which is a task both easy and inexpensive, was reasonable.  It also was authorized by the statute.").

However, "the statute" at issue there was *not* Article 39.15 of the Texas Code of Criminal Procedure, because, at that time, Article 39.15 did not directly address recordings of child interviews in sexual assault cases.

Instead, *In re District Attorney's Office of 25th Judicial District* was decided on how recordings of child interviews fit within the then-current version of Article 39.14, the general statute governing pretrial discovery in criminal cases.  *Id.*; *see also id.* at 246–48 (Keller, P.J., dissenting).

**B.      Early 2011:  The Prior Version of Article 29.15 of the Texas Code of Criminal Procedure**

In early 2011, Article 39.15 dealt with child pornography:

---

[7]The copying in that case was for use by defense counsel, not by a defense expert.  However, Article 39.14(a) was held to permit copying by "or on behalf of" the defendant's counsel.  *In re Dist. Att'y's Off. of 25th Jud. Dist.*, 358 S.W.3d at 245 (quoting TEX. CODE CRIM. PROC. ANN. art. 39.14(a)).

*Art. 39.15. DISCOVERY OF EVIDENCE THAT CONSTITUTES CHILD PORNOGRAPHY. (a) In the manner provided by this article, a court shall allow discovery under Article 39.14 of property or material that constitutes child pornography, as described by Section 43.26(a)(1), Penal Code.*

*(b) Property or material described by Subsection (a) must remain in the care, custody, or control of the court or the state as provided by Article 38.45.*

*(c) A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce any property or material described by Subsection (a), provided that the state makes the property or material reasonably available to the defendant.*

*(d) For purposes of Subsection (c), property or material is considered to be reasonably available to the defendant if, at a facility under the control of the state, the state provides ample opportunity for the inspection, viewing, and examination of the property or material by the defendant, the defendant's attorney, and any individual the defendant seeks to qualify to provide expert testimony at trial.*

Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 3, 2009 Tex. Gen. Laws 732, 733, amended by Act of May 27, 2011, 82d Leg., R.S., ch. 1322, §§ 9, 10, 2011 Tex. Gen. Laws 3825, 3828 (eff. Sept. 1, 2011) (current version at TEX. CODE CRIM. PROC. art. 39.15.)

As of early 2011, then, Article 39.15 did *not* deal with recordings of child interviews, and hence *In re District Attorney's Office of 25th Judicial District* did not discuss Article 39.15 when addressing the handling of child interviews. This justice has not located any decision declaring a recording of a child interview to be child pornography under Article 39.15 in its early 2011 form (with child pornography being defined by the statute referenced within Article 39.15, namely Section 43.26 of the Texas Penal Code, "Possession or Promotion of Child Pornography"). This

12

is not surprising, since interviews could be expected to occur in a safe setting, whereas Section 43.26 defines child pornography as "*visual* material that *visually depicts* a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct . . . ." TEX. PENAL CODE ANN. § 43.26(a)(1) (emphasis added). Given the absence of any discussion of the then-current version of Article 39.15, it appears that the recording in *In re District Attorney's Office of 25th Judicial District* did not meet the definition of child pornography. *See In re Dist. Att'y's Off. of 25th Jud. Dist.*, 358 S.W.3d at 245. Consequently, the three manner-of-production provisions of Article 39.15 do not appear to have been at issue in *In re District Attorney's Office of 25th Judicial District*. *See id.*

But this does not mean that the early 2011 version of Article 39.15 is irrelevant.

The structure of the present-day Article 39.15 was already in place in early 2011.

Article 39.15, as of the beginning of 2011, had one subject-matter provision making child pornography discoverable and *three* provisions regarding the manner of production for that subject matter. Those manner-of-production provisions required that the material must remain in the custody of the State or the court; prohibited copying of the material; and statutorily determined that, if a court required the State to make the material "reasonably available to the defendant," that duty would be discharged by providing "ample opportunity for the inspection viewing, and examination" at a facility under the State's control. *See* Act of May 18, 2009, 81st Leg., R.S., ch. 276, § 3, 2009 Tex. Gen. Laws 732, 733, *amended by* Act of May 27, 2011, 82d Leg., R.S., ch. 1322, §§ 9, 10, 2011 Tex. Gen. Laws 3825, 3828 (eff. Sept. 1, 2011) (current version at TEX. CODE CRIM. PROC. art. 39.15.)

**C.**     **January to May 2011: Article 39.15 of the Texas Code of Criminal Procedure Takes its Current Form**

The Texas Legislature amended Article 39.15 during the 82nd Regular Session.

In so doing, the Legislature expanded the scope of the subject matter covered by Article 39.15.

The bill containing that amendment was filed on January 25, 2011, meaning it was filed before *In re District Attorney's Office of 25th Judicial District.* It appears that the relevant language in the bill, the language amending Article 39.15, was inserted after *In re District Attorney's Office of 25th Judicial District* was decided.

On May 24, 2011, during the waning days of the 82nd Regular Session, on the second House reading of Senate Bill 407, Representative Peter Gallego offered the following floor amendment to Senate Bill 407 (as shown from this excerpt from the relevant page of the House Journal):

5272             82nd LEGISLATURE — REGULAR SESSION

    (6) In SECTION 8 of the bill, strike the amended heading to Article 39.15, Code of Criminal Procedure (page 7, lines 4 through 6) and substitute the following:
    Art. 39.15. DISCOVERY OF EVIDENCE DEPICTING OR DESCRIBING ABUSE OF OR SEXUAL CONDUCT BY [THAT CONSTITUTES] CHILD OR MINOR [PORNOGRAPHY].
    (7) In SECTION 9 of the bill, in added Article 39.15(a)(1), Code of Criminal Procedure (page 7, line 12), strike "or".
    (8) In SECTION 9 of the bill, in added Article 39.15(a)(2), Code of Criminal Procedure (page 7, line 14), between "Penal Code" and the period, insert the following:
; or
    (3) that is described by Section 2 or 5, Article 38.071, of this code
    Amendment No. 2 was adopted.

    **SB 407**, as amended, was passed to third reading.

14

This is the first appearance in the record of S.B. 407 of a reference to Article 38.071. It is also the first appearance in the record of what would prove to be the final language of Article 39.15.

Representative Gallego's amendment was passed by the House on May 25, 2011, the Texas Senate conferred with the amendment on May 27, 2011, the bill was sent to the governor on May 30, 2011, and the governor signed the bill into law on June 17, 2011. There have been no subsequent amendments.

Therefore, on September 1, 2011, Article 39.15 of the Texas Code of Criminal Procedure took effect.

> Art. 39.15. DISCOVERY OF EVIDENCE DEPICTING OR DESCRIBING ABUSE OF OR SEXUAL CONDUCT BY CHILD OR MINOR
>
> (a) In the manner provided by this article, a court shall allow discovery under Article 39.14 of property or material:
>
> (1) that constitutes child pornography, as described by Section 43.26(a)(1), Penal Code;
>
> (2) the promotion or possession of which is prohibited under Section 43.261, Penal Code; or
>
> (3) that is described by Section 2 or 5, Article 38.071, of this code.
>
> (b) Property or material described by Subsection (a) must remain in the care, custody, or control of the court or the state as provided by Article 38.45.
>
> (c) A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce any property or material described by Subsection (a), provided that the state makes the property or material reasonably available to the defendant.

(d)    For purposes of Subsection (c), property or material is considered to be reasonably available to the defendant if, at a facility under the control of the state, the state provides ample opportunity for the inspection, viewing, and examination of the property or material by the defendant, the defendant's attorney, and any individual the defendant seeks to qualify to provide expert testimony at trial.

TEX. CODE CRIM. PROC. ANN. art. 39.15.

There being no subsequent amendments, this is the version of Article 39.15 that has been in effect from September 1, 2011, to the present.

**D.      What Changed, and What did not:  Comparing the Versions of Article 39.15**

The amended (and current) version of Article 39.15 covers three subject matters, with two of them being new as compared to the early 2011 version.  The two new subject matters are what is commonly referred to as "sexting" and recordings of statements by children, which were added as Article 39.15, subsections (a)(2) and (3).  The three provisions regarding the manner of production remain unchanged from the version in effect at the start of the 82nd Legislature.  More specifically:

**1.      Child Pornography**

This subject matter remained the same, though it was moved into a subsection, from Article 39.15(a) to Article 39.15(a)(1).

**2.      "Sexting":  Section 43.261 of the Texas Penal Code**

The first new subject matter, sexting, was added by reference to a Penal Code provision. Article 39.15(a)(2), referring to Section 43.261 of the Penal Code ("Electronic Transmission of Certain Visual Material Depicting Minor").  Section 43.261 was an entirely new statute, created during the 82nd Legislature, which is to say that Section 43.261 was "new new" in the sense that

16

it was a new addition to Article 39.15 and that Section 43.261 itself was new. That subject matter is not directly at issue in this case, though, as will be discussed below, it is a key part of the context for the amendments to Article 39.15.

### 3. The "Video Statute": Article 38.071

The second new subject matter added to Article 39.15 in 2011 was recordings of statements by children, from both before and after a defendant is charged with an offense. Article 39.15(a)(3) added this new subject matter by reference to Article 38.071, Sections 2 and 6, of the Texas Code of Criminal Procedure. That provision of the Code of Criminal Procedure concerns "Testimony of Child Who is Victim of Offense," specifically evidence at "a hearing or proceeding in which the court determines that a child younger than 13 years of age would be unavailable to testify in the presence of the defendant about an offense defined by [listed statutory references of offenses]." TEX. CODE CRIM. PROC. ANN. art. 38.071, § 1. This, however, was a "new old" subject matter, in the sense that it was new to Article 39.15, but Article 38.071, Sections 2 and 5, had been around since 2001.[8]

The Court of Criminal Appeals has referred to these sections of Article 38.071 as the "video statute," describing it as follows: "The video statute creates a hearsay exception for a child's video-or audio-recorded pre-trial statements, but only if stringent requirements are met, including that the child is unavailable to testify at trial and that the interviewer is a neutral person

---

[8]They remain so today. Article 38.71 was amended in 2011, and then again in 2021, but neither of those revisions impacted the language of Sections 2 and 5; both of those revisions involved updates to the list of offenses in Section 1, and none of those revisions impacted the indicted offenses here, aggravated sexual assault under Section 22.021 of the Texas Penal Code. As discussed in section I.F. *infra*, however, Article 38.71 has been found to be unconstitutional.

17

experienced in child-abuse cases or a child-abuse expert." *Bays v. State*, 396 S.W.3d 580, 589 (Tex. Crim. App. 2013).

### 4. Unchanged Manner of Production Provisions

Again, though new subject matters were added in Article 39.15, subsections (a)(2) and (a)(3), there were no changes to Article 39.15, subsections (b), (c), and (d), regarding the manner of production of material falling within the subject matters set forth in Article 39.15(a).

### E. The Circumstances of the 2011 Amendment to Article 39.15 of the Texas Code of Criminal Procedure

At this point, a digression to examine Senate Bill 407 prior to May 18, 2011, is in order. This is done not to delve into legislative history, but to understand context.[9]

Prior to May 18, 2011, the legislative history of Senate Bill 407 shows the following:

On January 25, 2011, Senator Kirk Watson filed Senate Bill 407. At that time, S.B. 407 did not contain the language of the above-cited floor amendment to Article 39.15. Indeed, it did not address Article 39.15 at all.

Instead, S.B. 407 was focused on the multi-faceted problem of what to do about the electronic transmission of sexually explicit photographs, commonly known as "sexting," and more specifically, about sexting by, to, and between minors. This was largely a new phenomenon made possible by the advent and then widespread adoption of camera-equipped mobile phones.

---

[9]At no point is any statement by any individual legislator, or any group of legislators, used in the interpretation of Article 39.15. Indeed, the record reveals no statement specifically addressing Article 39.15.

18

Under then-existing laws, all those found guilty of sexting were subject to incarceration as a felon, as well as to a lifetime designation as a sex offender. S.B. 407, as filed, proposed, among other things, the addition of a new section of the Penal Code which would provide prosecutors with options for less severe penalties for sexting between minors, as well as an amendment to the Code of Criminal Procedure to grant trial courts sentencing authority to mandate education regarding the ill effects of sexting and the potential legal repercussions of any future sexting. On February 14, 2011, Representative (and former Speaker) Tom Craddick filed an identical companion bill in the House, House Bill 1309.

On March 29, 2011, and then again on the afternoon of April 5, 2011, the Senate Criminal Justice Committee held hearings and took testimony on S.B. 407. Beginning during the lunch hour of that same day, April 5, 2011, the House Committee on Criminal Jurisprudence held a hearing and took testimony on H.B. 1309.[10]

Between them, the two committees heard testimony from representatives of the Office of the Attorney General, the American Civil Liberties Union, the Burnet County Attorney's Office, the Council of School Attorneys, as well as the Texas District and County Attorneys Association. The committees also heard from individual speakers including a senior-status judge and a criminal defense attorney who appeared both in her professional capacity and in her capacity as the mother of a teenaged son. In addition to those who testified, many organizations and individuals attended the hearings, registering their positions on the bills. These include the

---

[10]House Hearing video: https://tlchouse.granicus.com/MediaPlayer.php?view_id=26&clip_id=3964 (last visited June 16, 2023). Senate Hearing video: https://tlcsenate.granicus.com/MediaPlayer.php?view_id=12&clip_id=1854 (last visited June 16, 2023). Senate Hearing video April 5: https://tlcsenate.granicus.com/MediaPlayer.php?view_id=12&clip_id=1407 (last visited June 16, 2023).

19

Association of Texas Professional Educators, the Bexar County Criminal District Attorney's Office, Children's Advocacy Centers of Texas, Inc., Texans Care for Children, The Texas Association for the Protection of Children, the Texas National Association for the Advancement of Colored People, the Texas Parent Teacher Association, the Willacy County and District Attorney's Office, and the Uvalde County Attorney. Further, the committees had at their disposal the expertise of the Chief of Criminal Investigation of the Office of the Attorney General, as well as the Director of the Texas School Safety Center.

During the hearings of the Senate Criminal Justice Committee, Senator Watson admitted that the perfect law was likely unattainable, but he expressed hope that, through discussion and collective wisdom, it would be possible to craft an approach that balanced the competing concerns implicated by all the myriad of ways in which sexting might occur, e.g., as part of a consensual relationship between similar-aged teens, as a form of harassment between teens, or even worse. Senator Watson acknowledged that the testimony shed light on considerations that needed to be addressed by modifying the original language of S.B. 407. Multiple commentors spoke to the complexities of the issues. Some observed that they had difficulty simplifying their views to being "for" or "against" the bill because they were very much for the Texas Legislature taking on the subject and agreed with parts of the proposals under discussion but had concerns with other parts of those proposals.

At the hearings, there was no express mention of Article 39.15. However, among the concerns raised was the handling of evidence regarding sexting.

**F.** **September 2011: Article 38.071 of the Texas Code of Criminal Procedure Declared Unconstitutional**

As noted above, when the Legislature amended Article 39.15 in 2011, it added the subject matter of video recordings of child interviews by Article 39.15(a)(3)'s reference to Article 38.071, Sections (2) and (5).

But a significant part of Article 38.071 was declared unconstitutional by the Court of Criminal Appeals in September 2011, just as Article 39.15(a)(3) took effect. *Coronado v. State*, 351 S.W.3d 315, 317 (Tex. Crim. App. 2011) ("Although we agree that there must be balance between a defendant's right to confrontation and a societal need to protect fragile and traumatized child victims, that balance cannot constitutionally be struck by the method set out in Section 2 of Article 38.071.").

The Court of Criminal Appeals reached this conclusion by observing that recorded interviews are "testimonial" for purposes of the Confrontation Clause. *Id.* at 324 (citing *Davis v. Washington*, 547 U.S. 813, 828 (2006) ("Virtually all courts that have reviewed the admissibility of forensic child-interview statements or videotapes after the *Davis* decision have found them to be 'testimonial' and inadmissible unless the child testifies at trial or the defendant had a prior opportunity for cross-examination.")).

The Court of Criminal Appeals subsequently held that video recordings of child interviews could not be admitted under the "outcry" statute, Article 38.072 of the Texas Code of Criminal Procedure. *Bays v. State*, 396 S.W.3d 580, 590 (Tex. Crim. App. 2013) ("To permit admission of a complainant's videotaped statement under the more lenient outcry statute would undermine the video statute's rigid unavailability requirement and its requirements aimed at

21

guaranteeing the expertise and neutrality of the interviewer."). In the same decision, the Court of Criminal Appeals found that outcry testimony was a constitutionally permissible hearsay exception so long as the procedural prerequisites are met and both the victim and the person to whom the outcry statement was made are available for cross-examination for Confrontation Clause purposes. *Id.* at 581–82, 584 ("properly designated outcry witness"), 589–90.[11] Video evidence of the outcry, however, was found to be outside the scope of the outcry statute. *Id.* at 588.[12]

In sum, the recorded video statements of children used in sexual assault cases are testimonial for Confrontation Clause purposes, so the child must testify at trial, or the defendant's rights under the Confrontation Clause must be otherwise protected. *Coronado*, 351 S.W.3d at 324.

## G.    2017: *In re State ex rel. Tharp* and *Powell v. Hocker*

In 2017, the Court of Criminal Appeals revisited the issue of video recordings of interviews of children in sexual assault cases. *In re State ex rel. Tharp*, No. WR-86,409-01,

---

[11]"[W]e determine that Article 38.072 of the Texas Code of Criminal Procedure, the outcry statute, is a hearsay exception statutorily limited to live testimony of the outcry witness." *Bays*, 396 S.W.3d 581. [T]he outcry statute applies only when the victim is available to testify." *Id.* at 589.

[12]As stated in *Bays*,

> In light of the belief that a trusted adult would usually be the outcry witness, it is reasonable to assume that this witness would have neither the opportunity nor the desire to videotape a child's outcry statement as that child reveals for the first time the intimate details of an abusive sexual encounter. Because it envisioned that the child's outcry would take the form of a spontaneous verbal communication to a trusted adult, it is reasonable to conclude that the Legislature did not intend to permit admission of a child's videotaped statements, which suggest a lesser degree of spontaneity (and, perhaps, reliability).

*Id.* at 588.

2017 WL 4160990 (Tex. Crim. App. Sept. 20, 2017) (not designated for publication).  Though

this case was cited in the briefing, it is unpublished, and is therefore not a binding ruling on

either Article 39.15 or, more broadly, on the subject of the handling of the video recordings.

TEX. R. APP. P. 77.3 ("Unpublished opinions have no precedential value and must not be cited as

authority by counsel or by a court.").

Also, in 2017, in a published decision, the Court of Criminal Appeals addressed the

handling of discovery under Article 39.14.  *Powell*, 516 S.W.3d 488.  It was a driving while

intoxicated case, so the specific discovery at issue here was not addressed.  *Id.*  Instead, the

question was whether, under Article 39.14(f), a defendant could do more than view materials in

her attorney's office, i.e., whether the defendant could have her own copies of discovery

material.  *Id.* at 490–91.[13]  The defendant in *Powell* did not rely on the express text of Article

39.14(f).  Instead, the defendant asserted that "the balance" of the statute gives trial courts

"sufficient leeway . . . to order that the defendant be provided copies in a particular case when

good cause is demonstrated why doing so would facilitate fair representation of the defendant."

*Id.* at 496.  The Court of Criminal Appeals, however, rejected that approach: "Nowhere does the

statute contemplate that a trial court should be able to second-guess the legislative judgment that

a represented defendant simply may not be permitted to obtain copies of discovery materials

from his counsel."  *Id.*  Significantly, though *Powell* prohibited providing copies directly to the

---

[13]"She did not claim that her client had been unable to 'view' the discovery materials in her possession, as the statute expressly permits.  Instead, she claimed that it was important that her client also be able to obtain her own copies of those materials in order to effectively help counsel prepare her defense."  *Powell*, 516 S.W.3d at 491.

defendant, the case was premised on the ability of the *defendant's attorney* to have a copy of discovery materials. *Id.* at 491.

**H.      2019:  Amendment of Section 264.408 of the Texas Family Code**

Subchapter E of Chapter 264 of the Texas Family Code concerns Children's Advocacy Centers, such as The Martin House Children's Advocacy Center, under whose auspices the interview at issue here was conducted.  Within that subchapter is Section 264.408 of the Texas Family Code, which deals with the handling of CAC records.  The statute provides that videos of interviews can be disclosed to other governmental agencies, medical professionals, and advocates for the alleged victim.  TEX. FAM. CODE ANN. § 264.408(a)(1), (2).[14]  However, regarding defendants, the statute was amended in 2019 to state:

> (d-1)  An electronic recording of an interview described by Subsection (d) is subject to *production* under Article 39.14, Code of Criminal Procedure, and Rule 615, Texas Rules of Evidence.[15] A court shall deny any request by a defendant to copy, photograph, duplicate, or otherwise reproduce an electronic recording of an interview described by Subsection (d), provided that the prosecuting attorney makes the electronic recording reasonably available to the defendant in the same manner as property or material may be  made available to  defendants, attorneys, and

---

[14]Stating that CAC records can be disclosed to:

(1) the department, department employees, law enforcement agencies, prosecuting attorneys, medical professionals, and other state or local agencies that provide services to children and families; and (2) the attorney for the alleged victim who is the subject of the records and a court-appointed volunteer advocate appointed for the alleged victim under Section 107.031.

[15]Rule 615 is titled "Producing a Witness's Statement in Criminal Cases."  TEX. R. EVID. 615.

24

expert witnesses under Article 39.15(d), Code of Criminal Procedure.

TEX. FAM. CODE ANN. § 264.408(d-1) (emphasis added).[16]

The 2019 amendment, though, merely inserted the term "electronic recording" for what had previously been "video recording," "video recording of an interview," and in the statute's original form, "videotaped interview."[17]

One thing that is notable is that the express text of Section 264.408(d-1) of the Texas Family Code makes an *in pari materia* bundle of itself and Article 39.14, Article 39.15, and Rule 615 of the Texas Rules of Evidence.

What is also notable is that the 2019 amendment comes after *Coronado* and *Powell* and left in place the language that, at least initially, electronic recordings of interviews are "subject to production" under Article 39.14 (as well as under Rule 615 of the Texas Rules of Evidence) with Article 39.15 coming into play if the defendant makes a "request" for the video. In other words, it sets in place a circular analysis where Section 264.408(d-1)'s "subject to production" under Article 39.14 would need to be weighed against the statutory definition of "reasonably available" under Article 39.15(d) as well as against the defendant's right to witness statements under Rule 615 of the Texas Rules of Evidence. Further, by referencing Article 39.14, Section 264.408(d-1) of the Texas Family Code references the statute that was addressed by the Court of Criminal Appeals in *In re District Attorney's Office of 25th Judicial District.*

---

[16]Act of May 16, 2019, 86th Leg., R.S., ch. 396, § 8, 2019 Tex. Gen. Laws 735, 739.

[17]Act May 23, 2013, 83d Leg., R.S., ch. 1069 (H.B. 3259), § 3, 2013 Tex. Gen. Laws 2550, 2550 (eff. Sept. 1, 2013), Act of May 19, 1997, 75th Leg., R.S., ch. 575, § 33, 1997 Tex. Gen. Laws 2012, 2021 (eff. Sept. 1, 1997).

## II.    Statutory Interpretation Overview

When courts engage in their law-interpreting function, "[t]he end goal is interpreting the text of the statute." *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021), *reh'g denied* (Apr. 14, 2021).  That means every word of the statute: "we must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *Id.*  The mandate to give effect to "every word" is broad. *Id.*  In part, this is because of the even broader "entire act" mandate. *Id.*  The courts are to consider any particular provision as part of the entire Legislative enactment in which it is contained. *Id.* (footnotes omitted) (citations omitted).[18]  The "every word" mandate is broader still because of the "*in pari materia*" rule of interpretation.  Related statutory provisions should be construed, where possible, as a collective whole, even when they are not part of the same Legislative enactment:

> "It is a settled rule of statutory interpretation that statutes that deal with the same general subject, have the same general purpose, or relate to the same person or thing or class of persons or things, are considered as being *in pari materia* though they contain no reference to one another, and though they were passed at different times or at different sessions of the legislature."

*Diruzzo v. State*, 581 S.W.3d 788, 799 (Tex. Crim. App. 2019) (quoting *Cheney v. State*, 755 S.W.2d 123 (Tex. Crim. App. 1988)).  Effectively, then, statutes that are part of an *in pari materia* group are to be read "as though they were parts of *one and the same law*." *Id.* (emphasis added).

---

[18]"We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts.  When we are dealing with the passage of a particular act, such as the one at issue here, *we look to the entire act* in determining our Legislature's intent with respect to a specific provision." *Watkins*, 619 S.W.3d at 272 (citations omitted) (emphasis added).

Consequently, "the text of the statute" includes the entire Legislative Act in which a provision in question is found, as well as those statutes that are *in pari materia* with the provision in question. *See Ex parte Kibler*, Nos. WR-91,197-01 WR-91,197-02, 2022 WL 4360668, at *3 (Tex. Crim. App. Sept. 21, 2022) (plurality op.) (orig. proceeding), *reh'g denied* (Nov. 9, 2022) ("We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts.").

The Legislature's words are to be given the meaning those words had at the time the Legislature chose them: "We focus our attention on the literal text of the statute in question and 'attempt to discern the fair, objective meaning of that text *at the time of its enactment*.'" *Lang v. State,* 561 S.W.3d 174, 180 (Tex. Crim. App. 2018) (emphasis added) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)).

Therefore, once the full scope of "the text of the statute" has been ascertained as described above, the courts look for the date of the latest act of the Texas Legislature to assess the meaning of the "the text of the statute" at that time: "[A]ppellate courts are constrained to construe a statute that has been amended as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions." *Powell*, 516 S.W.3d at 493 (quoting *Mahaffey v. State*, 316 S.W.3d 633, 642 (Tex. Crim. App. 2010)).[19]

---

[19]*But see Ex parte Schroeter*, 958 S.W.2d 811, 813 (Tex. Crim. App. 1997) (per curiam) (orig. proceeding) ("one session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight"). This justice perceives at least four reasons to see minimal tension between *Ex parte Schroeter* and *Powell* and to resolve whatever tension there may be in favor of *Powell* being the dominant rule. First, *Ex parte Powell* is the more recent pronouncement of the Court of Criminal Appeals. Second, *Ex parte Schroeter* had before it an amendment that created *ex post facto*

With "the text of the statute" and the timeframe in mind, the courts turn to the tools available to us to give the Legislature's words their plain meaning:

> To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and construe them according to any applicable technical definitions and otherwise according to the rules of grammar and common usage.

*Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020).

Similarly, "[t]ime-honored canons of interpretation, both semantic and contextual, can aid interpretation, provided the canons esteem textual interpretation." *Watkins*, 619 S.W.3d at 272 (quoting *BankDirect Cap. Fin., LLC v. Plasma Fab, LLC*, 519 S.W.3d 76, 84 (Tex. 2017)). Put more strongly, canons are secondary to context, definition, and grammar. *Id.* ("*most importantly*, we read words and phrases in context and construe them according to rules of grammar and common usage" (emphasis added)).

The context of a statute can include publicized events that provided an impetus for Legislative action, as well as the state of the law prior to Legislative action and even the overall direction of Legislative action. *Id.* at 274–78.[20]

concerns when construed with related provisions. For this reason, *Ex parte Schroeter* ultimately went on to hold that applying the new statute in a way that would render it unconstitutional would be an absurd result. The "absurd result" analysis is a separate step in the process. Third, subsequent cases have cited *Ex parte Schroeter* not in the context of outright amendments of prior statutes but when a party attempted to rely on *comments in the legislative history*. *See, e.g.*, *Chase v. State*, 448 S.W.3d 6, 27 (Tex. Crim. App. 2014) ("What [a representative] thought about a statute that was not being amended is not controlling, nor, in the present context, even particularly persuasive."). Viewing *Ex parte Schroeter* in that fashion, it appears to fit within *Powell*.

[20]In *Watkins*, the Court of Criminal Appeals found that "the meaning of 'material' [in Article 39.14(a)] is plain, unambiguous, and synonymous with 'relevant' *when considered in context*." *Watkins*, 619 S.W.3d at 278 (capitalization and emphasis from heading removed) (emphasis added). Immediately before that holding, *Watkins* provided this context:

The context of a statute may also include the "practical realities" of the subject matter addressed by the statute.[21]

In addition, the context includes judicial decisions: "[W]hen examining amendments to existing legislation, it is presumed that the legislature was aware of caselaw affecting or relating to the statute." *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992), *superseded by statute,* Acts 1993, 73d Leg., ch. 900, § 5.05, eff. Sept. 1, 1994*, as recognized in Lopez v. State,* 253 S.W.3d 680, 686 & n.28 (Tex. Crim. App. 2008);[22] *Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001) ("We presume the Legislature was aware of this caselaw in drafting the provision now before us."). Indeed, where terms have been construed by a high court and the

---

> Attempts were made over different legislative sessions to amend [Article 39.14] to expand the scope of discovery, but, aside from small changes, those attempts were unsuccessful. The wrongful conviction of Michael Morton provided a significant spark the Legislature needed to completely change criminal discovery in Texas. As discussions of the proposed amendments revealed, Michael Morton had spent twenty-five years in prison for a crime he did not commit because the prosecutor trying his case had withheld material, exculpatory evidence.

*Id.* at 274.

> Generally speaking, the current version of Article 39.14 [meaning the version created by the Michael Morton Act] removes procedural hurdles to obtaining discovery, broadens the categories of discoverable evidence, and expands the State's obligation to disclose. . . . It is against this backdrop that we consider the use of the word "material" as it appears in Article 39.14(a).

*Id.* at 278.

[21]*Ex parte Kibler*, 2022 WL 4360668, at *5 ("Reading the text in context, the legislature's use of "before" and "after" reflects an understanding of the practical realities of plea practice.")

[22]Ironically, *Grunsfeld* proved to be a demonstration of Legislative awareness. *Grunsfeld* held that unadjudicated extraneous offenses were not admissible at sentencing. Demonstrating its awareness of caselaw, the Texas Legislature responded to *Grunsfeld* by amending Article 37.07 of the Code of Criminal Procedure to permit the consideration of extraneous offenses at sentencing. *See* Act of Sept. 1, 1993, 73d Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759 (eff. Sept. 1, 1993) (current version at TEX. CODE CRIM. PROC. ANN. art. 37.07 (Supp.)).

Legislature subsequently uses those terms, the presumption is that the Legislature adopted the high court's interpretation. *Watkins*, 619 S.W.3d at 281.[23]

## III.   Judicial Obedience

When the Court of Criminal Appeals has interpreted a particular word or phrase in a statute, lower courts are bound by that interpretation, even when that interpretation was not so focused as to constitute an "authoritative" interpretation, even when the statute has been amended in other respects, and even when the plain text of the statute (viewed in the new context of the amendments) would appear to be at odds with the decision of the Court of Criminal Appeals. *Id.* at 280–82.[24]

---

[23]The *Watkins* court held,

> When the Legislature revises a particular statute that has been judicially construed, without changing the construed language, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute. The clearest rationale for this presumption is that when a term has been authoritatively interpreted by a high court, the members of the bar practicing in that field reasonably enough assume that, in statutes pertaining to that field, the term bears the same meaning. But when there has been no settled interpretation of the statutory phrase about which the legislature could have been made aware, the presumption does not apply.

*Watkins*, 619 S.W.3d at 281 (citations omitted).

[24]"[T]he court of appeals noted its obligation to apply this Court's precedent interpreting the previous version of the statute rather than rely on the plain text of the statute." *Watkins*, 619 S.W.3d at 280. The court of appeals in that instance was our sister court in Waco, the Tenth Court of Appeals. *Watkins v. State*, 554 S.W.3d 819, 821 (Tex. App.—Waco 2018), *rev'd and remanded by* 619 S.W.3d 265 (Tex. Crim. App. 2021). Since the Court of Criminal Appeals "noted" the obligation of intermediate courts as expressed by the Waco Court of Appeals, we turn to our sister court's articulation of the obligation:

> The phrase at issue, "that constitute or contain evidence material to any matter involved in the action," was present in Article 39.14 before it was amended by the Michael Morton Act. *See* Act of May 14, 2013, 83d Leg., R.S., ch. 49, § 2, 2013 Tex. Gen. Laws 106, 106 (*eff.* Jan. 1, 2014) (*codified at* TEX. CODE CRIM. PROC. art. 39.14). The phrase was not modified or defined by the Legislature when it passed the amendments to Article 39.14. What is "material" had been subject to substantial judicial interpretation prior to the debate and passage of the Michael Morton Act. Thus, applying well-established precedent from the

This, however, is an *intra*-judicial branch matter of due order and hierarchy as between the Court of Criminal Appeals and inferior courts. In *Watkins*, the court of appeals held that precedent required it to follow the Court of Criminal Appeals "regardless of what the Legislature may have thought or intended to accomplish."[25] When the case proceeded to discretionary review, the State urged that the Court of Criminal Appeals was bound to interpret the Legislature's amended statute according to the obligation of obedience incumbent on the court of appeals.[26] The Court of Criminal Appeals rejected that argument.[27]

Once the case reached the highest court, the question was no longer *intra*-judicial precedential obedience, but whether the highest court's prior decisions fell within the "Prior Construction Canon" of interpretation as a matter of *inter*-branch relations between the Legislature and the Judiciary.[28] That canon of interpretation requires that a judicial interpretation be "authoritative" before it can be presumed that a subsequent act of the Legislature adopted the

---

Court of Criminal Appeals, by which this Court is bound, we are constrained to hold that the definition or standard we must use to determine whether the objectionable evidence was material is the same after the passage of the Michael Morton Act as it was before passage, regardless of what the Legislature may have thought or intended to accomplish.

*Watkins* (Tenth Court of Appeals), 554 S.W.3d at 821 (footnotes omitted) (citations omitted).

[25]*Id.*

[26]*Watkins* (Court of Criminal Appeals), 619 S.W.3d at 280 ("Given that obligation, the State argues that we must presume the Legislature's continued use of the phrase 'material to any matter involved in the action' indicated an attempt to incorporate this Court's precedent interpreting the previous version of the statute.").

[27]*Id.*

[28]*Id.* at 281 ("When the Legislature revises a particular statute that has been judicially construed, without changing the construed language, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute.").

interpretation.[29]  After setting out a chronology of the prior version of the statute, its own decisions, and the decisions of the United States Supreme Court, the Court of Criminal Appeals held that its prior decisions did not constitute an "authoritative" determination and, therefore, did not fall within the prior construction canon.[30]

Notably, the Court of Criminal Appeals cited with approval the intermediate court's duty to follow the decisions of the Court of Criminal Appeals even when, ultimately, the Court of Criminal Appeals itself went on to find that its own prior decisions were not so authoritative as to have been presumptively adopted by the Legislature.  Thus, it appears that an inferior court's duty of obedience under *intra*-judicial precedential rules is somewhat broader than the scope of the "prior construction" canon of *inter*-branch relations.  *See id.*

## IV.    Expanded Background of the Present Case

I expand upon the background of the case because it sheds further light on the issues and also shows the trial court's efforts to craft a reasonable solution.

Relator Reid McCain, in his capacity as Harrison County District Attorney (hereafter the State), petitions this Court for mandamus relief.  The State asks this Court to direct Respondent, the Honorable Brad Morin, presiding judge of the 71st Judicial District Court of Harrison County, to rescind his order requiring the State to provide a copy of a recorded forensic interview of an alleged child victim to Real Party in Interest Lorenza Cooper, Jr. (Cooper).

---

[29]*Id.*

[30]*Id.*

On October 29, 2020, a Harrison County grand jury returned a true bill of indictment against Cooper for two counts of aggravated sexual assault of a child. The indictment alleges that the offenses took place on or about May 1, 2020, when the alleged victim was less than six years old. At some point after the indictment, the alleged victim was interviewed by professional(s) affiliated with the "Children's Advocacy Center," which this justice takes to mean the Martin House Children's Advocacy Center (hereafter CAC), which provides services to Harrison County, as well as to Gregg and Marion Counties. *See* TEX. FAM. CODE ANN. §§ 264.401–.411 (Supp.). On April 5, 2022, Richard Hurlburt was appointed as counsel for Cooper.[31] Thereafter, Cooper moved for, and was granted, approval to retain—at taxpayer expense—an expert witness to assist in his defense.

On September 22, 2022, Cooper filed a motion asking that the State provide a copy of the video of the CAC interview for review by an expert witness who might, or might not, ultimately offer trial testimony, i.e., a consulting expert. Cooper's motion asserted that it would "cause unnecessary costs to the county" for his consulting expert to travel to Marshall, Texas, to view the video. Cooper's motion also asserted that having the expert show up in person in the prosecutor's office would violate the right of defendants to shield the identity of consulting experts. Cooper's motion pledged that, if permitted, the copy of the video would be viewed by defense counsel, the consulting expert, and no others. Cooper's motion further pledged that no additional copies of the video would be made and that defense counsel would return the video to the prosecutor after the consulting expert's review was completed. In conjunction with his

---

[31]Cooper had prior counsel, but the record before this Court does not indicate whether or when that counsel was appointed.

motion, Cooper provided a proposed order that contained an option for the trial court to grant relief consistent with the motion.

On September 26, 2022, the trial court signed the proposed order, making it the order of the trial court. That would become the order on review in this Court (hereinafter the trial court's order).[32]

On October 13 and 14, 2022, the State filed, and then twice amended, a motion to reconsider the trial court's order. The second amended motion to reconsider complained that the trial court's order was entered without a hearing. The second amended motion to reconsider urged that copying of the CAC interview video would violate Article 39.15 of the Texas Code of Criminal Procedure and Section 264.408 of the Texas Family Code. The second amended motion to reconsider cited *Dickens v. Ct. App. 2nd Sup. Jud. Dist.* and *Dist. Attorney's Office*, 2011 WL 1235027. Ultimately, the second amended motion to reconsider asserted that Article 39.15(a)(3) of the Texas Code of Criminal Procedure addresses, as the State puts it, "forensic interviews of children" and that 39.15(c) provides both that the prosecutor's office is the sole permissible location for viewing such videos and that the copying of such videos is expressly prohibited.

On October 20, 2022, the trial court set the matter for hearing on October 26, 2022.

During the hearing of October 26, 2022, the State presented first, urging that the trial court's order (i.e., the order of September 26, 2022) had been granted without a hearing,[33] and

_____

[32]It does not appear that the trial court circled, initialed, or otherwise indicated endorsement of the "GRANTED" portion of the proposed order, nor does it appear that the trial court struck through or otherwise indicated rejection of the "DENIED" portion of the proposed order. However, both Cooper and the State operated on the understanding that the trial court had granted Cooper's motion. That understanding was validated by the trial court at the October 26, 2022, hearing.

34

that Article 39.15 of the Texas Code of Criminal Procedure and Section 264.408 of the Texas Family Code prohibit the copying of child interviews in sexual assault cases. The State pledged to have such videos available for review "whenever the defense in any case wants to come see it." Cooper's counsel responded by pointing out that his practice before the trial court gave the trial court reason to trust his representation that both counsel and consulting expert would review a copy of the video without making additional copies and without sharing it with anyone else: "The victim is not going to know about it. Nobody is going to know about it but myself and the expert." To that end, Cooper's counsel asserted that he had provided the trial court, *in camera*, a copy of the consulting expert's signature on a proposed order agreeing to such terms.[34] As in his motion, Cooper asserted that criminal defendants have a right to shield the identity of consulting experts. Cooper once again pointed out the expense to the taxpayers of Harrison County for a consulting expert to travel to review the video. The State responded by observing that, while the State holds Mr. Hurlburt in high regard, the State considers that to be of no moment here. In the State's view, the only relevant consideration is that making a copy of the interview video for off-site review is "just a violation of the statute, . . . the [L]egislature was very particular in these cases involving children . . . there's a reason they wanted to protect that. The child has already been victimized enough."

---

[33]A point that is not raised in this original proceeding.

[34]This proposed order does not appear in the mandamus record provided by the State. Cooper, however, attached to his response what he represents to be the *in camera* proposed order, with the consulting expert's signature redacted. As this proposed order does not appear to have come from the either the trial court or the district clerk, we do not consider it to be part of the record on mandamus. Thus, while the record shows that the trial court was aware that the consulting expert was an out-of-town witness for purposes of estimating the expense involved, the record is not entirely clear on whether the trial court knew the identity of the consulting expert for purposes of assessing the consulting expert's propensity to comply with the trial court's instructions regarding the handling of a copy of the interview video.

Having heard the arguments by the State and Cooper at the October 26, 2022, hearing, the trial court disavowed any intent to permit the routine copying of interview videos in every case. But in *this* case, the trial court stated, "I'm trying to save the county money," which, considering the estimated drive time of the consulting expert, the trial court figured would amount to "several thousands of dollars."[35] The trial court expressed satisfaction that the consulting expert was willing to sign off on a "protective order" and therefore understood "the consequences" of dispersing the video. The trial court asked if there was anything of a "pornographic" nature in the interview video. The State said there was not. In light of these considerations, the trial court concluded the hearing by stating, "I am going to stand by my ruling and issue it under a protective order."

The State filed its petition for writ of mandamus on January 6, 2023. The State's petition did not contest the grounds Cooper put forward in the trial court as supporting the trial court's exercise of discretion to permit copying, subject to a protective order, of the interview video, which is to say that the State did not contest any of the following:

- the discoverability of the video;[36]

- the propriety of Cooper seeking the services of an out-of-town expert;[37]

---

[35]The trial court's comments at the hearing were vague statements that the expert was *presumptively* "from a larger city" hours away from Marshall. This could mean that the trial court did not recall the precise location or identity of the expert, or that trial court had never been given that information, or that the trial court, through vagueness, was protecting the defendant's asserted consulting expert privilege by refraining from giving away details the State could use to reverse-engineer a well-informed guess of the expert's identity.

[36]As it had done in the trial court, the State conceded in this Court its duty to provide the video to Cooper (the discoverability), but contests the way that duty is to be carried out.

[37]Cooper's argument turns in significant part on the increased travel costs of an out-of-town expert. Cooper's use of an out-of-town expert was not questioned below. Cooper, the State, and the trial court all took Cooper's hiring of an out-of-town expert as either proper under the precedents regarding the retention of expert witnesses or at least water

- the right of criminal defendants to withhold the identity of consulting experts;[38]

- the trial court's favorable assessment of the propensity of both defense counsel and the consulting expert to comply with a protective order regarding the handling of a copy of the interview video; or

- the increased costs to the taxpayers of Harrison County resulting from the consulting expert traveling to Marshall (as compared to the relatively minimal costs of providing a copy of the video, subject to a protective order, to Cooper's consulting expert).

Rather, the State asserts that the statutes at issue mandate on-site viewing of interview videos under all circumstances, and, hence, the statutes at issue prohibit copying of interview videos. In sum, the State asserts that the trial court had zero discretion in the matter.

## V.     The Mandamus Standard: *No Adequate Remedy* and *Ministerial Act*

"To be entitled to mandamus relief, the relator must show two things: (1) that he has no adequate remedy at law, and (2) that what he seeks to compel is a ministerial act." *In re State ex rel. Weeks*, 391 S.W.3d 117, 122 (Tex. Crim. App. 2013) (orig. proceeding).

Concerning the first prong, "[a]n order permitting a defendant to obtain copies of discovery materials is not listed among those that the State is entitled to appeal in a criminal case under Article 44.01 of the Code of Criminal Procedure." *Powell*, 516 S.W.3d at 494 n.11 (citing TEX. CODE CRIM. PROC. ANN. art. 44.01(a)).

---

under the bridge in this case. So too does this justice. *See Ex parte Jimenez*, 364 S.W.3d 866, 876–77 (Tex. Crim. App. 2012) (orig. proceeding).

[38]A right which, given the State's non-opposition, I assume for purposes of this dissent to exist, without undertaking to examine the matter. Further, denial of mandamus would protect the ability to shield the identity of the consulting expert.

Regarding the second prong, an act is not ministerial unless "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen*, 343 S.W.3d at 810 (quoting *State ex rel. Young v. Sixth Jud. Dist. Ct. of Appeals*, 236 S.W.3d at 210).

However, shortly after the petition was filed in this case, the Court of Criminal Appeals issued a mandamus decision that, it appears, might be merging or importing the civil mandamus standard of the Texas Supreme Court: "As our sister court has phrased it, 'a clear failure by the trial court to analyze or apply the law correctly will constitute an abuse of discretion, and may result in appellate reversal by extraordinary writ.'" *In re City of Lubbock*, 666 S.W.3d 546, 554 (Tex. Crim. App. 2023) (orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding)).

While the quoted words of *Walker v. Packer* might could be construed in a way to be consistent with *Bowen* and *State ex. rel Young*, it does not appear that the Texas Supreme Court's application of *Walker v. Packer* can be so reconciled. *See, e.g.*, *In re Sherwin-Williams Co.*, No. 22-0559, 2023 WL 3261790, at *1 (Tex. May 5, 2023) (per curiam) (orig. proceeding) ("The trial court has *no discretion* in determining the law or applying the law to the facts." (emphasis added)). The Texas Supreme Court affords trial courts "no discretion" in determining the law or applying the law to the facts "even when the law is unsettled." *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) (orig. proceeding).

Thus, if the civil mandamus standard applied, we would be called upon to interpret the statutes and rules at issue, and—no matter how complex the questions or unsettled the law—we

38

would then have to reverse the trial court if, after the fact, we came to a different outcome. Or rather, we *might* have to do so. Mandamus is not automatic in civil cases. Rather, in the civil context, "adequate remedy" has been recognized as a "proxy" for the "careful balance of jurisprudential considerations" required by the special role of the writ of mandamus in the judicial system, a balance which implicates "both public and private interests." *Id.* at 136. The civil "adequacy" inquiry is a flexible test by which the court of appeals weighs the costs and benefits of deciding the issue immediately via mandamus versus waiting to resolve the issue after trial. *Id.*[39] Regarding this petition, I see no need to conduct a civil adequacy test, nor would I choose to expand the use of the civil mandamus standard in the criminal context, if, indeed, that is what *In re City of Lubbock* portends.

Notably, though *In re City of Lubbock* cited *Walker v. Packer*, it did so in a case of "first impression," which, under limited circumstances, is subject to mandamus under existing Court of Criminal Appeals mandamus authorities. *In re City of Lubbock*, 666 S.W.3d at 554 n.28 (citing *State ex rel. Watkins v. Creuzot*, 352 S.W.3d 493, 506 (Tex. Crim. App. 2011)). Therefore, it

---

[39]Holding:

> An appellate remedy is "adequate" when any benefits to mandamus review are outweighed by the detriments. When the benefits outweigh the detriments, appellate courts must consider whether the appellate remedy is adequate.
>
> This determination is not an abstract or formulaic one; it is practical and prudential. It resists categorization, as our own decisions demonstrate. Although this Court has tried to give more concrete direction for determining the availability of mandamus review, rigid rules are necessarily inconsistent with the flexibility that is the remedy's principal virtue.

*In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

appears that the Court of Criminal Appeals' citation to *Walker v. Packer* may be limited to the "first impression" context.

The case now before this Court is not a question of first impression. The question of how to handle CAC interviews in sexual assault cases was addressed by the Court of Criminal Appeals in *In re District Attorney's Office of 25th Judicial District* and was before the Court of Criminal Appeals in a subsequent unpublished decision.

It does not appear that the Court of Criminal Appeals has articulated for itself or, more importantly, conferred on this Court what is called "*Schlagenhauf*" mandamus authority in the federal system. This has been described as "use [of] the writ as a one-time device to 'settle new and important problems' that might have otherwise evaded expeditious review." *In re JPMorgan Chase & Co.*, 916 F.3d 494, 499 n.4 (5th Cir. 2019) (orig. proceeding) (alteration in original) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 111 (1964)). Under such a standard, it would be possible to avoid harsh findings such as abuse of discretion while at the same time interpreting the statutes at issue.

At the end of this day, though, the ministerial act standard as articulated by *Bowen* applies.

## VI.    Conclusion

The issues raised by the Petitioner are important. Here, though, the petition is filed in the face of a 2011 decision of the Court of Criminal Appeals permitting CAC videos to be copied. *In re Dist. Att'y's Off. of 25th Jud. Dist.*, 358 S.W.3d at 246. Thus, to grant mandamus here is to

40

say that it was beyond the bounds of reason for the trial court to rely on the Court of Criminal Appeal's published decision from 2011. The majority does so. I cannot.

There is much force in the majority's analysis though. The primary force being this: a key reason for focusing on "the literal text" of a statute "is that the Legislature is *constitutionally entitled* to expect that the Judiciary will faithfully follow the specific text that was adopted." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

Here, though, we are on mandamus review, where the question is whether "the facts and circumstances dictate but one rational decision under unequivocal, well-settled (i.e., from extant statutory, constitutional, or case law sources), and clearly controlling legal principles." *Bowen*, 343 S.W.3d at 810. The trial court was faced with an interlocking set of statutes and a rule of evidence, some of which have been amended since the 2011 Court of Criminal Appeals decision. This implicates the rule of interpretation which calls for related statutes to be read together. It also implicates the rule of interpretation for the related statutes to be considered as of the date of the most recent amendment (although this is not always so). Complicating matters further, there have been Court of Criminal Appeals decisions in this field since this time, decisions which interleave with the statutory amendments. Then there is *Watkins*, under which inferior courts have a duty to follow the decisions of the Court of Criminal Appeals.

Ultimately, there is the ministerial act requirement of mandamus.

Under the circumstances shown in this case, I would find that the requirement has not been met. The trial court strove to strike a reasonable, case-specific balance, taking into consideration both the need to protect the child's interests and the need to protect local taxpayers

41

from expenses that could be reasonably avoided under the law. *See In re Dist. Att'y's Off. of 25th Jud. Dist.*, 358 S.W.3d at 246 ("The court's order for the State to make the copy, which is a task both easy and inexpensive, was reasonable.").

In sum, I dissent because, under the ministerial act standard, I would deny mandamus.

Jeff Rambin
Justice

Date Submitted:     June 19, 2023
Date Decided:      June 20, 2023

Publish