

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00071-CR

_____

SHAYLA SHANTEL HARTIFIELD, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 21M-1887-CCL

Before Stevens, C.J., van Cleef and Rambin, JJ.
Opinion by Justice Rambin

# OPINION

At issue is the proper method of calculating restitution for damages to a car during a crime. Pursuant to a plea agreement, Shayla Shantel Hartifield entered a plea of guilty to and was convicted of deadly conduct, specifically, running another driver off the road. After a hearing on restitution, the trial court ordered Hartifield to pay $1,300.00 in restitution to repair the vehicle that had been run off the road. On appeal, Hartifield argues that the trial court abused its discretion by ordering her to pay for $1,300.00 in repairs as restitution. Hartifield asserts that the relevant statute, Article 42.037 of the Texas Code of Criminal Procedure, does not provide for cost of repair as a permissible method of calculating restitution. Pursuant to that statute, and on the facts of this case, we hold that assessing restitution based on the cost of repair was within the trial court's discretion. We affirm.

## I. Factual and Procedural Background

Hartifield was charged with one count of deadly conduct. The State alleged that, on or about August 3, 2021, Hartifield "recklessly engage[d] in conduct that placed Alize Murphy in imminent danger of serious bodily injury by attempting to run her off the road with her vehicle and causing damage to the said victim's vehicle." Pursuant to the terms of a plea agreement, Hartifield entered a plea of guilty. She and the State agreed to conduct a hearing on the amount of restitution, if any, she should be obligated to pay.

During the hearing on restitution, Jared Thomas, part owner of Texarkana Auto Body Works, testified that it would take $5,875.79 to repair the 2008 Dodge Charger that Murphy was driving at the time of the incident. On cross-examination, Thomas was questioned about whether

2

putting that sort of money into repairs made sense, given that the vehicle's value (as put forward by Hartifield) was $4,600.00.  Thomas testified that his estimate was based on the use of new parts.  Thomas conceded that the vehicle could be repaired, albeit "improperly," for less than the estimate provided by his shop.  Murphy testified that she sought out repair estimates from several professional repair shops, but instead, she purchased replacement parts for $700.00 to $800.00 from a self-service auto salvage yard and paid a family friend, whom she knew only as "James," $600.00 to install the replacement parts.  After hearing the evidence and arguments of counsel, the trial court ordered Hartifield to pay $1,300.00 in restitution to Murphy.  Hartifield appealed.

## II.  The Abuse-of-Discretion Standard for Appeals of Restitution Orders

Hartifield argues that the trial court abused its discretion in setting the amount of restitution.[1]

We review challenges to restitution orders under an abuse-of-discretion standard. *Cartwright v. State*, 605 S.W.2d 287, 288–89 (Tex. Crim. App. [Panel Op.] 1980).  A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).  "An abuse of discretion by the trial court in setting the amount of restitution will implicate due-process considerations." *Campbell v. State*, 5

---

[1]The State contends that Hartifield failed to preserve this point of error for our review.  Here, the trial court held a hearing on the sole issue of the appropriateness and amount, if any, of restitution.  After Hartifield was ordered to pay restitution, she requested and received permission to appeal the trial court's ruling.  This issue was raised and addressed in the trial court, and therefore, it was preserved for our review. *See Garcia v. State*, 663 S.W.3d 92, 97 (Tex. Crim. App. 2022) ("[A] restitution complaint should be forfeited by a defendant who *foregoes* the opportunity to address it in the trial court." (emphasis added)).  Hartifield presents a second issue, which merges into her first issue. Though Murphy paid for the repairs, it appears that her mother owned the car.  However, subsection (f)(1) of Article 42.037 provides, "The court may, in the interest of justice, order restitution to any person who has compensated the victim for the loss to the extent the person paid compensation."  TEX. CODE CRIM. PROC. ANN. art. 42.037(f)(1) (Supp.).  Hartifield does not contest that Murphy may receive restitution but asserts that subsection (f)(1) cannot be used as an "end-around" of what Hartifield contends is subsection (b)(1)'s bar on using repair as the method of restitution.

S.W.3d 693, 696 (Tex. Crim. App. 1999). Due process places three separate limits "on the restitution a trial court may order": (1) "the amount must be just and must be supported by a factual basis within [the record]," (2) "the restitution ordered must be [only] for the offense for which the defendant is criminally responsible," and (3) the restitution must be "for the victim or victims of the offense [for] which the offender is charged." *Cantrell v. State*, 75 S.W.3d 503, 512 (Tex. App.—Texarkana 2002, pet. ref'd); *see Campbell*, 5 S.W.3d at 696–97.

"Restitution serves multiple purposes, including restoring the victim to the status quo and forcing an offender to address and remedy the specific harm that [s]he has caused." *Hanna v. State*, 426 S.W.3d 87, 91 (Tex. Crim. App. 2014). "A broad interpretation of the restitution statutes provides judges with '*greater discretion* in effectuating opportunities for rehabilitating criminals, deterring future harms, and efficiently compensating victims.'" *Id.* (emphasis added) (quoting *Lemos v. State*, 27 S.W.3d 42, 45 (Tex. App.—San Antonio 2000, pet. ref'd)). "However, the legislature has also recognized limits on the right to restitution: the amount of restitution must be just; [and] it must have a factual basis in the record . . . ." *Id.*

## III. Statutory Construction

When courts engage in their law-interpreting function, "[t]he end goal is interpreting the text of the statute." *Watkins v. State*, 619 S.W.3d 265, 272 (Tex. Crim. App. 2021). That means every word of the statute. "[W]e must presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably

4

possible." *Id.* The mandate to give effect to "every word" is broad; courts are to consider any particular provision as part of the entire Legislative enactment in which it is contained. *Id.*[2]

Courts look for the date of the latest act of the Texas Legislature to assess the meaning of "the text of the statute" at that time. "[A]ppellate courts are constrained to construe a statute that has been amended as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions." *Powell v. Hocker*, 516 S.W.3d 488, 493 (Tex. Crim. App. 2017) (orig. proceeding) (quoting *Mahaffey v. State*, 316 S.W.3d 633, 642 (Tex. Crim. App. 2010)).[3]

In addition, "when examining amendments to existing legislation, it is presumed that the legislature was aware of caselaw affecting or relating to the statute." *Grunsfeld v. State*, 843 S.W.2d 521, 523 (Tex. Crim. App. 1992), *superseded by statute on other grounds*, TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a), *as recognized in Lopez v. State*, 253 S.W.3d 680, 681 n.28

---

[2]*Watkins* holds, "We do not focus solely upon a discrete provision; we look at other statutory provisions as well to harmonize provisions and avoid conflicts. When we are dealing with the passage of a particular act, such as the one at issue here, *we look to the entire act* in determining our Legislature's intent with respect to a specific provision." *Watkins*, 619 S.W.3d at 272 (emphasis added) (footnote omitted) (citations omitted).

[3]*But see Ex parte Schroeter*, 958 S.W.2d 811, 813 (Tex. Crim. App. 1997) (per curiam) (orig. proceeding) ("[O]ne session of the legislature does not have the power to declare the intent of a past session, and a legislative construction of an act of another legislature is uniformly held to be entitled to little weight."). This Court perceives at least four reasons to see minimal tension between *Ex parte Schroeter* and *Powell* and to resolve whatever tension there may be in favor of *Powell* being the dominant rule. First, *Powell* is the more recent pronouncement of the Texas Court of Criminal Appeals. Second, *Ex parte Schroeter* had before it an amendment that created *ex post facto* concerns when construed with related provisions. For this reason, *Ex parte Schroeter* ultimately went on to hold that applying the new statute in a way that would render it unconstitutional would be an absurd result. The "absurd result" analysis is a separate step in the process. Third, subsequent cases have cited *Ex parte Schroeter* not in the context of outright amendments of prior statutes but when a party attempted to rely on *comments in the legislative history*. *See, e.g.*, *Chase v. State*, 448 S.W.3d 6, 27 (Tex. Crim. App. 2014) ("What [a representative] thought about a statute that was not being amended is not controlling, nor, in the present context, even particularly persuasive."). Viewing *Ex parte Schroeter* in that fashion, it appears to fit within *Powell*.

(Tex. Crim. App. 2008);[4] *see Scott v. State*, 55 S.W.3d 593, 596 (Tex. Crim. App. 2001) ("We presume the Legislature was aware of this caselaw in drafting the provision now before us."). Where terms have been construed by a high court and the Legislature subsequently uses those terms, the presumption is that the Legislature adopted the high court's interpretation. *Watkins*, 619 S.W.3d at 281.[5]

"We focus our attention on the literal text of the statute in question and 'attempt to discern the fair, objective meaning of that text at the time of its enactment.'" *Lang v. State*, 561 S.W.3d 174, 180 (Tex. Crim. App. 2018) (quoting *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991)). As the Texas Court of Criminal Appeals instructed, "To determine plain meaning, we read the statute in context and give effect to each word, phrase, clause, and sentence if reasonably possible, and construe them according to any applicable technical definitions and otherwise according to the rules of grammar and common usage." *Lopez v. State*, 600 S.W.3d 43, 45 (Tex. Crim. App. 2020).

---

[4]Ironically, *Grunsfeld* proved to be a demonstration of Legislative awareness. *Grunsfeld* held that unadjudicated extraneous offenses were not admissible at sentencing. Demonstrating its awareness of caselaw, the Texas Legislature responded to *Grunsfeld* by amending Article 37.07 of the Texas Code of Criminal Procedure to permit the consideration of extraneous offenses at sentencing. *See* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 5.05, 1993 Tex. Gen. Laws 3586, 3759 (current version at TEX. CODE CRIM. PROC. art. 37.07).

[5]*Watkins* held,

> When the Legislature revises a particular statute that has been judicially construed, without changing the construed language, it is presumed that the Legislature intended that the same construction should continue to be applied to that statute. The clearest rationale for this presumption is that when a term has been authoritatively interpreted by a high court, the members of the bar practicing in that field reasonably enough assume that, in statutes pertaining to that field, the term bears the same meaning. But when there has been no settled interpretation of the statutory phrase about which the legislature could have been made aware, the presumption does not apply.

*Watkins*, 619 S.W.3d at 281 (footnotes omitted) (citations omitted).

It has long been understood that "may" indicates discretionary, whereas "shall" indicates that which is mandatory. *Ford v. State*, 305 S.W.3d 530, 539 (Tex. Crim. App. 2009) (holding that "may," as used in Article 28.01 of the Texas Code of Criminal Procedure, "suggested, but did not require").

The context of a statute may include the overall direction of Legislative action. *Watkins*, 619 S.W.3d at 274–78.[6] The context of a statute may also include the "practical realities" of the subject matter addressed by the statute.[7]

## IV. Analysis

"Article 42.037 sets out a comprehensive restitution scheme . . . ." *Hanna*, 426 S.W.3d at 92. *Hanna* was also about a vehicle leaving the roadway, though it involved a single vehicle that struck a utility pole. In *Hanna*, the Texas Court of Criminal Appeals examined the "purposes" and "goals" of Article 42.037. *Id.* at 91–92. These include the goals that the Legislature set forth for the entire Texas Code of Criminal Procedure, namely, the "prevention, suppression, and punishment of crime." *Id.* at 91 (quoting TEX. CODE CRIM. PROC. ANN. art. 1.26). To those ends, and consistent with the express intent of the Legislature, the Texas Code of Criminal Procedure is construed "liberally." *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 1.26). As noted above, "[r]estitution serves multiple purposes," and a "broad interpretation" of restitution

---

[6]In *Watkins*, the Texas Court of Criminal Appeals found that the meaning of "material" in Article 39.14(a) is plain and unambiguous and, when considered in context, synonymous with the word "relevant." *Id.* at 278. Immediately before that holding, *Watkins* discussed the context of the circumstances giving rise to the Michael Morton Act and set forth that the general thrust of that Act was to "expand the State's obligation to disclose." *Id.* at 274–78.

[7]*Ex parte Kibler*, 664 S.W.3d 220, 227 (Tex. Crim. App. 2022) (plurality op.) (orig. proceeding) ("Reading the text in context, the legislature's use of 'before' and 'after' reflects an understanding of the practical realities of plea practice.").

statutes affords trial courts "greater discretion" to achieve those purposes. *Id.* at 91 (citation omitted). "The legislature intended restitution to '"adequately compensate the victim of the offense" in the course of punishing the criminal offender.'" *Id.* (quoting *Cabla v. State*, 6 S.W.3d 543, 545 (Tex. Crim. App. 1999)). "Society is benefitted by punishment, including restitution, that is *directly related* to the offenses for which a defendant has been charged and convicted." *Id.* at 91–92 (emphasis added) (quoting *Cabla*, 6 S.W.3d at 545–46). *Hanna* held that the burden of proving the amount of restitution falls on the State. *Id.* at 92. The State bears the burden of establishing the amount of restitution by a preponderance of the evidence. *Id.* at 95. The damage for which restitution is sought "must be a 'direct' result of the defendant's criminal offense—that is, the State must prove, by a preponderance of the evidence, that the loss was a 'but for' result of the criminal offense and resulted 'proximately,' or foreseeably, from the criminal offense." *Id.* The contested issue in *Hanna*, though, was not the measure of restitution, but causation. *Id.* at 98.[8] Notably, the State sought repair-based restitution,[9] the defendant did not contest that repair was a permissible measure of restitution, and the Texas Court of Criminal Appeals held that "the State proved only the amount of the damage to the utility pole," but did not prove that the damage was the result of the crime, namely intoxicated driving. *Id.* at 98. The evidence proving that amount was "a 'damage repair invoice' that gave the total cost of repairing [the utility company's] pole." *Id.* at 90.

---

[8]*Hanna* held, "People frequently have car accidents regardless of whether they are intoxicated. To obtain restitution, the State must prove that appellant's intoxicated driving was the 'but for' and proximate cause of the damage." *Hanna*, 426 S.W.3d at 98. Another contested issue in *Hanna* was whether a party receiving restitution needed to be a victim named in the charging instrument. *Id.* at 94.

[9]"$7,767.88 in restitution to Lubbock Power and Light (LP & L) for repairing a utility pole that appellant's car had struck." *Id.* at 89.

*Burt* continued the liberal interpretation of the restitution statutes. *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014) ("For all of these reasons, we have interpreted restitution statutes liberally to effectuate fairness to the victims of crime.").[10] However, *Burt* enumerated the following limits on the trial court's authority:

> [D]ue process places three limitations on the restitution a trial judge may order: (1) the restitution ordered must be for only the offense for which the defendant is criminally responsible; (2) the restitution must be for only the victim or victims of the offense for which the defendant is charged; and (3) the amount must be just and supported by a factual basis within the record.

*Id.* at 758. The issue in *Burt*, though, was notice to the defendant, not the measure of restitution.[11]

In examining Article 42.037, we look first to the applicable "shall" provisions. Subsection (c) states,

> The court, in determining whether to order restitution and the amount of restitution, *shall* consider: (1) *the amount of the loss sustained by any victim* and the amount paid to or on behalf of the victim by the compensation to victims of crime fund as a result of the offense; and (2) *other factors the court deems appropriate*.

TEX. CODE CRIM. PROC. ANN. art. 42.037(c) (Supp.) (emphasis added). Further, "[t]he court *shall* impose an order of restitution that is *as fair as possible to the victim* or to the compensation to victims of crime fund, as applicable." TEX. CODE CRIM. PROC. ANN. art. 42.037(e) (Supp.) (emphasis added). Subsection (e) also provides, "The imposition of the order may not unduly

---

[10]Describing further "the liberal public-policy purpose of Article 42.037, which favors restitution to crime victims." *Burt*, 445 S.W.3d at 758.

[11]*Id.* at 760. ("The problem in this case is that appellant was never told of the specific amount of restitution in open court and given an opportunity to challenge the sufficiency of the evidence or the specific amount of restitution due to each victim.").

complicate or prolong the sentencing process." *Id.* Consistent with trial courts having a zone of discretion when setting the type and amount of restitution, subsection (k) states, "The court *shall* resolve any dispute relating to the proper *amount* or *type* of restitution." TEX. CODE CRIM. PROC. ANN. art. 42.037(k) (Supp.) (emphasis added).

In addition, there is a "shall" that, though it does not factually apply to this case, nonetheless sheds light on the appropriate outcome. In subsection (t), which was added in 2017, the Legislature stated what manner of restitution "shall" be provided regarding a specific crime, namely the improper labeling of recordings. Act of May 28, 2017, 85th Leg., R.S., ch. 913, § 4, 2017 Tex. Gen. Laws 3718, 3719) (codified at TEX. CODE CRIM. PROC. art. 42.037(t)) (referencing TEX. BUS. & COM. CODE ANN. § 641.054). [12] Thus, in 2017, the Legislature showed that, when it so desires, the Legislature can use "shall" to mandate a particular method of calculating restitution.

Hartifield relies on the "may" language in subsection (b)(1)[13] to assert that the trial court was restricted to the value-based restitution measures of subsection (b)(1)(B)[14] and, therefore,

---

[12]Article 42.037 was amended two other times between 2017 and the August 3, 2021, date of the offense in this case. *See* Act of May 21, 2019, 86th Leg., R.S., ch. 469, § 2.14, 2019 Tex. Gen. Laws 1065, 1135 (eff. Jan. 1, 2021) (adding "nonsubstantive" internal statutory references in subsections (a) and (i) but otherwise leaving the language of those subsections intact); Act of May 23, 2019, 86th Leg., R.S., ch. 1352, § 4.02, 2019 Tex. Gen. Laws 3981, 4020 (eff. Jan. 1, 2020) (modifying subsection (g) and changing internal statutory references to the newly modified subsection (g)). The text of those changes does not impact the analysis. Those 2019 Legislative acts do, though, set 2019 as the date on which we assess the entirety of Article 42.037. *See Powell*, 516 S.W.3d at 493.

[13]"If the offense results in damage to or loss or destruction of property of a victim of the offense, the court *may* order [specified restitution] . . . ." TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1) (emphasis added).

[14]"[I]f return of the property is impossible or impractical or is an inadequate remedy, to pay an amount equal to the greater of: (i) the value of the property on the date of the damage, loss, or destruction; or (ii) the value of the property on the date of sentencing, less the value of any part of the property that is returned on the date the property is returned." TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1)(B).

had no authority to use the cost of repair as a measure of restitution. *See* TEX. CODE CRIM. PROC. ANN. art. 42.037(b)(1)(B). In support of this position, Hartifield relies on *Miller v. State*, 343 S.W.3d 499, 503 (Tex. App.—Waco 2011, pet. ref'd) ("[R]estitution does not include cost of repair; it includes the value of the property on the date of the damage, or the value of the property on the date of sentencing less the value of any part of the property that is returned on the date the property is returned.").

The *Miller* court, in 2011, did not have the benefit of *Hanna*, which was decided in 2014. Nor did *Miller* have the benefit of the Legislature's 2017 addition of subsection (t) to Article 42.037. Bearing in mind that, when construing any part of Article 42.037, we are to consider the Act as a whole,[15] the statute we examine today differs from the statute *Miller* examined in 2011.[16]

Looking at the question anew, it is notable that, when the Legislature added the "shall" of subsection (t), it left the "may" of subsection (b)(1) in place. Consistent with the "every word" mandate of *Watkins*, we hold that the multiple "shall" provisions in Article 42.037, including subsections (c), (e), and (k), point to a permissive view of "may" in subsection (b)(1). *Watkins*, 619 S.W.3d at 272. Consistent with *Ford*, we hold that "may" in subsection (b)(1) is permissive, not mandatory. *Ford*, 305 S.W.3d at 539.

---

[15]*Watkins*, 619 S.W.3d at 272 ("[W]e look to the entire act in determining our Legislature's intent with respect to a specific provision.").

[16]The question now before us had not been "authoritatively interpreted by a high court" when Article 42.037 was amended. *See id.* at 281. The *Miller* court, like this Court, is not a high court. *Hanna*, though highly instructive, did not have the method of restitution before it as a contested issue.

We, therefore, hold that it was within the trial court's discretion to use cost of repair as the measure of restitution in this case. Consistent with *Burt*, we further hold that the amount of restitution set using that measure, $1,300.00, is "just and supported by a factual basis within the record." *Burt*, 445 S.W.3d at 758.

We affirm the trial court's judgment.


Jeff Rambin
Justice

Date Submitted:      September 7, 2023
Date Decided:        November 8, 2023

Publish