In re Matthew POWELL, Lubbock County District Attorney, relator

v.

Honorable Mark HOCKER, County Court at Law Number One of Lubbock County, respondent

NO. WR-85,177-01

Court of Criminal Appeals of Texas.

DELIVERED: April 5, 2017

ATTORNEYS FOR THE RESPON-DENT: Allison Clayton, Attorney at Law, P.O. Box 64752, Lubbock, TX 79464.

ATTORNEYS FOR THE STATE (RE-LATOR): Lauren Murphree, Assistant District Attorney, P.O. Box 10536, Lubbock, TX 79408, Stacey Soule, State's Attorney, Austin TX.

## OPINION

Yeary, J., delivered the opinion for a unanimous Court.

In *Padilla v. McDaniel*, 122 S.W.3d 805, 808 (Tex. Crim. App. 2003), we held that, "when a court of appeals and this court have concurrent, original jurisdiction of a petition for a writ of mandamus against the judge of a district or county court, the petition should be presented first to the court of appeals unless there is a compelling reason not to do so." In this original mandamus proceeding, Relator, Matthew Powell, who is the District Attorney of Lubbock County, would have this Court compel Respondent, Judge Hocker, a county court at law judge, to rule in a certain way in a discovery dispute arising from a misdemeanor prosecution for driving while intoxicated (DWI). We filed and set the cause to address, first, whether the court of appeals has concurrent jurisdiction such that Relator should have filed his

application for writ of mandamus in that court under *Padilla*. We hold that the court of appeals does not have concurrent jurisdiction and that Relator therefore properly filed his original mandamus application in this Court. On the merits of the mandamus issue, we hold that Relator has satisfied the criteria for obtaining mandamus relief.

## BACKGROUND

Ellen Wilson, the real party in interest in this case, was charged with misdemeanor DWI in the County Court at Law Number One of Lubbock County. Her attorney obtained discovery under the recent amendments to Article 39.14 of the Texas Code of Criminal Procedure, the so-called "Michael Morton Act." TEX. CODE CRIM. PROC. art. 39.14, as amended by Acts 2013, 83rd Leg., ch. 49, § 2, p. 106, eff. Jan. 1, 2014. Subsection (f) of Article 39.14 permits a defense attorney to "allow a defendant ... to view the [discovery] information provided under this article," but the defense attorney "may not allow" the defendant "to have copies of the information provided[.]" *Id.* § (f).[1] Wilson's attorney filed a motion to "release" her client from this prohibition contained in Article 39.14(f); in a brief filed in support of the motion, she prayed that the county court at law would "permit defense counsel to give her client a properly redacted copy of the requested items of the State's evi-

---

1. In its entirety, Subsection (f) of Article 39.14 reads:

    (f) The attorney representing the defendant, or an investigator, expert, consulting legal counsel, or agent for the attorney representing the defendant, may allow a defendant, witness, or prospective witness to view the information provided under this article, but may not allow that person to have copies of the information provided, other than a copy of the witness's own statement. Before allowing that person to

view a document or the witness statement of another under this subsection, the person possessing the information shall redact the address, telephone number, driver's license number, social security number, date of birth, and any bank account or other identifying numbers contained in the document or witness statement. For purposes of this article, the defendant may not be the agent for the attorney representing the defendant. TEX. CODE CRIM. PROC. art. 39.14, § (f).

dence." She did not claim that her client had been unable to "view" the discovery materials in her possession, as the statute expressly permits. Instead, she claimed that it was important that her client also be able to obtain her own copies of those materials in order to effectively help counsel prepare her defense. At the conclusion of a non-evidentiary hearing, Judge Hocker granted Wilson's motion, over the State's objection, but stayed the effect of his ruling pending a State's application for writ of mandamus. Judge Hocker commented: "I look forward to hearing what the wise men in Amarillo have to say. And I'll abide by whatever they rule."

But rather than file its original mandamus action in the Amarillo Court of Appeals, the State filed it directly with this Court. Citing the opinion of another court of appeals in *In re Meyer*, 482 S.W.3d 706 (Tex. App.—Texarkana 2016), the State argued that filing its mandamus application in this Court was appropriate, notwithstanding *Padilla*, because the courts of appeals lack jurisdiction to issue the writ of mandamus against a judge of a statutorily created county court. We filed and set the cause and ordered additional briefing. We asked the parties to address both the question whether the court of appeals has concurrent mandamus jurisdiction with this Court, such that the State should have filed its original application in that court consistent with *Padilla*, and, if not, whether the State is entitled to the mandamus relief it seeks.[2]

## MANDAMUS JURISDICTION

Article 5, Section 6(a), of the Texas Constitution defines the appellate jurisdiction of the courts of appeals. In addition, it provides that "[s]aid courts shall have such other jurisdiction, original and appellate, as may be prescribed by law." Tex. Const. art. V, § 6(a). Thus, the constitution leaves it to the Legislature to "prescribe" the original jurisdiction of the courts of appeals, including jurisdiction over mandamus matters. Section 22.221 of the Government Code defines the writ of mandamus authority for the courts of appeals. Tex. Gov't Code § 22.221. Subsection (a) of Section 22.221 provides that the courts of appeals "may issue a writ of mandamus and all other writs necessary to enforce the jurisdiction of the court." *Id.* § (a). That provision is not implicated here. Subsection (b) provides that "[e]ach court of appeals for a court of appeals district may issue all writs of mandamus, agreeable to the principles of law regulating those writs, against a ... judge of a district or county court in the court of appeals district." *Id.* § (b). The question in this case is whether, to the extent that Section 22.221(b) authorizes courts of appeals to mandamus judges of "county courts," that includes judges of county courts at law as well.

■ The parties agree that, according to the plain language of the applicable statutes, the mandamus jurisdiction of the courts of appeals does not extend to a writ of mandamus against a county court at law judge. We think so too. Section 22.221 of the Government Code appears in Title 2 of the Government Code, which is controlled by the definitions in Section 21.009.[3] Section 21.009 of the Government Code defines "county court" for purposes of Title 2

---

**2.** Both Relator and Respondent have filed briefs. Although we invited Wilson, the real party in interest, to file a brief as well, she has not done so.

**3.** Respondent acknowledges that "Section 22.221 (establishing a [court of appeals'] mandamus jurisdiction) clearly falls within the purview of Section 21.009's definitions." Response to Motion for Leave to File Petition for Writ of Mandamus ("Response") at 6.

of that Code ("Judicial Branch") to be "the court created in each county by Article V, Section 15, of the Texas Constitution." TEX. GOV'T CODE § 21.009(1).[4] By contrast, " 'Statutory county court' means a county court created by the legislature by its authority under Article V, Section 1, of the Texas Constitution, including county courts at law[.]" TEX. GOV'T CODE § 21.009(2).[5] Thus, when Section 22.221(b) confers mandamus authority in the courts of appeals "against a ... judge of a ... county court in the court of appeals district[,]" it plainly means only the county courts created by the Texas Constitution, not those "statutory county courts," such as county courts at law, created by the Legislature. Relator argues that when the meaning and import of statutory language are as plain as this, we must be governed thereby. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991).

Respondent does not deny that the statutory language is plain.[6] He nevertheless urges us not to follow the plain language because, in his view, legislative history indicates that the plain language of these provisions, when read together, fails to capture the true legislative intent. This argument ignores *Boykin*'s explicit declaration that it is only "constitutionally permissible" to consider extra-textual factors, such as legislative history, when following the plain statutory language would lead to an absurd result. *Id.* at 785-86. Respondent contends that it was the Legislature's intent, when it passed what is now Section 22.221(b), to expand the mandamus jurisdiction of the intermediate appellate courts of Texas in order to alleviate the burdensome caseload of the higher courts. In 1983, the Legislature amended the predecessor to current Section 22.221(b) to confer broad mandamus authority to the courts of appeals over both district courts and county courts "agreeable to the principles of law regulating such writs[.]" Acts 1983, 68th Leg., ch. 839, § 3, p. 4768, eff. June 19, 1983.[7] Given the legislative intent to lessen the burden on the higher courts, there was no reason to suppose, Respondent contends, that "county courts"—at least as originally envisioned by the Legislature—would be limited to constitutionally created county courts. The definitions now appearing in Section 21.009 were not promulgated until four years later, in 1987. Acts 1987, 70th Leg., ch. 148, § 2.02, p. 542, eff. Sept. 1, 1987. The Legislature did not intend for the 1987 definitions in Section 21.009, Respondent concludes, to restrict the courts of appeals' mandamus jurisdiction that it had expanded just four

4. *See* TEX. CONST. art. V, § 15 ("There shall be established in each county in this State a County Court, which shall be a court of record ...").

5. *See* TEX. CONST. art. V, § 1 ("The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law. The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto.").

6. "Through these two statutes, it appears as though the Legislature unambiguously intended for [courts of appeals] to only have mandamus jurisdiction over constitutional county courts, which means that only this Court has mandamus jurisdiction over statutory county courts." Response at 6.

7. Prior to this 1983 amendment, courts of appeals could already issue writs of mandamus under this provision against district and county courts, but only to compel them "to proceed to trial and judgment in a cause[.]"

years earlier in Section 22.221(b).[8]

■ We disagree. "[A]ppellate courts are constrained to construe a statute that has been amended as if it had originally been enacted in its amended form, mindful that the Legislature, by amending the statute, may have altered or clarified the meaning of earlier provisions." *Mahaffey v. State*, 316 S.W.3d 633, 642 (Tex. Crim. App. 2010) (citing *Getts v. State*, 155 S.W.3d 153, 158 (Tex. Crim. App. 2005)); *Ramos v. State*, 303 S.W.3d 302, 306-07 (Tex. Crim. App. 2009). Whatever the Legislature may have had in mind in 1983, when it originally invested the courts of appeals with jurisdiction to mandamus "county courts," once it promulgated the definitions in Section 21.009, and plainly made those definitions applicable to Section 22.221(b), we "are constrained" to read those provisions, in combination, as if they had originally been enacted in that amended form. If the language of the amendment, though plain, no longer accurately reflects the legislative intent, it is incumbent upon the Legislature to amend the statute again "to conform it to its intent." *Getts*, 155 S.W.3d at 158 (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 542, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004)).

Respondent contends that this plain-meaning construction of the statute creates absurdities. He does not argue that it is absurd, however, in the sense that it is unworkable or inherently illogical.[9] Instead, he argues that exporting Section 21.009's definitions to other parts of Title 2 creates ancillary absurdities; that to construe Section 22.221(b) to embrace only the definition of "county court" spelled out in Section 21.009(1) would invite the incorporation of that same limited definition in other contexts in which, he contends, it is simply unimaginable that the Legislature could have wanted. For example, Respondent argues that application of Section 21.009(1)'s definition of "county court" to the constitutional provision that endows the courts of appeals with appellate jurisdiction would lead to the conclusion that the courts of appeals lack appellate jurisdiction over judgments of the county courts at law. He points out that Section 22.220 of the Government Code (which is also in Title 2) statutorily confers appellate jurisdiction in the courts of appeals over "civil cases within its district of which the district courts and county courts have jurisdiction when the amount in controversy of the judgment rendered exceeds $250,

**8.** Respondent alludes to a handful of courts of appeals opinions that have entertained mandamus proceedings against county courts at law, even after Section 21.009 was enacted. Response at 13-14. A few of those opinions are inapposite, however, because they rely on the court of appeals' mandamus jurisdiction to protect its own appellate jurisdiction, under Section 22.221(a), and therefore do not inform the question before us here. *In re Estate of Velvin*, 398 S.W.3d 426, 428 (Tex. App.—Texarkana 2013); *In re Gulf Coast Business Development Corp.*, 247 S.W.3d 787, 792 (Tex. App.—Dallas 2008). At least one court of appeals has indeed granted mandamus relief in a published opinion—apparently under the authority of Section 22.221(b)—but without addressing whether it had jurisdiction to do so. *In re Cortez*, 143 S.W.3d 265

(Tex. App.—San Antonio 2004). The only case that has squarely addressed whether the courts of appeals actually have such jurisdiction held, as we do today, that they do not. *See In re Meyer*, 482 S.W.3d at 714 ("[W]e only have jurisdiction to issue a writ of mandamus against a constitutional county court, not a statutory county court.").

**9.** Respondent also argues that the plain-meaning construction is absurd because it does not optimally effectuate the expressed legislative intent to reduce the burdensome caseloads of the Supreme Court and this Court. Response at 11. But it would not be intrinsically absurd for the Legislature to be selective in implementing that intent.

exclusive of interest or costs." TEX. GOV'T CODE § 22.220(a). Applying Section 21.009(1)'s definition of "county court" to this statutory provision would limit the courts of appeals' appellate jurisdiction, he claims, to cases emanating from the constitutional county courts, excluding appeal— at least of civil cases—from the statutory county courts.

This argument is ultimately unpersuasive. Unlike the courts of appeals' mandamus jurisdiction, their jurisdiction over direct appeals is not a purely legislative creation. Article 5, Section 6, of the Texas Constitution provides that the "Courts of Appeals shall have appellate jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." TEX. CONST. art. V, § 6(a). Thus, the courts of appeals have appellate jurisdiction over "County Courts" as that term may be interpreted by the courts, as a matter of Article 5, Section 6(a)—not according to what the Legislature may declare it to mean, as a matter of statutory definition. It is true that Article 5, Section 6, also permits the Legislature to "restrict and regulate" the courts of appeals' appellate jurisdiction. Even if this could reasonably be construed to endow the Legislature with the constitutional authority to altogether eliminate appellate jurisdiction over

the judgments of statutory county court, the Government Code provisions do not purport to do that.[10] Nothing about our construction of Section 22.221(b) in light of the statutory definitions contained in Section 21.009(1) would necessarily affect the disposition of this separate and discrete issue of constitutional interpretation— what does Article 5, Section 6(a), mean by "County Courts"?—should it ever arise.

In short, we agree with the Texarkana Court of Appeals that courts of appeals in Texas do not have jurisdiction to issue writs of mandamus against statutory county courts. *In re Meyer*, 482 S.W.3d at 714. Relator properly filed his application for writ of mandamus in this Court. We therefore proceed to address the merits of his claim.

### THE DISCOVERY DISPUTE

A relator must satisfy two predicates to justify mandamus relief. *State ex rel. Young v. Court of Appeals for the Sixth Dist.*, 236 S.W.3d 207, 210 (Tex. Crim. App. 2007). First, he must show that he has no adequate remedy at law for obtaining the relief he seeks. *Id.* The State has no right to appeal Respondent's order permitting trial counsel to provide the real party in interest with a copy of the discovery materials in this case, and Respondent does not seriously contest that Relator has satisfied the first predicate for obtaining mandamus relief.[11] Second, a relator must

---

10. Reading the term "County Courts" in Article 5, Section 6, in this way, it is possible to construe Section 22.220(a) of the Government Code simply to limit the appellate jurisdiction of the district and constitutional county courts over civil matters to cases involving amounts in controversy of more than $250, while placing no such monetary limitation on the appeal of civil matters arising from the statutory county courts. While it may be difficult to understand why the Legislature would do such a thing, inscrutability of purpose does

not necessarily equate with absurdity. We may not ignore legislative intent that is plainly expressed in the language of a statute on the ground that we do not fully comprehend its purpose.

11. An order permitting a defendant to obtain copies of discovery materials is not listed among those that the State is entitled to appeal in a criminal case under Article 44.01 of the Code of Criminal Procedure. TEX. CODE CRIM. PROC. art. 44.01(a). Respondent concedes

demonstrate a clear right to the relief he seeks. *Id.* Where the conduct of a court is involved, a relator must demonstrate that the act he seeks is ministerial, not judicial, in nature. *Id.* An act is ministerial, and therefore subject to the compulsion of mandamus, even though a judicial decision is involved, however, when the governing law is of such absolute clarity and certainty that nothing is left to the court's discretion—when the law upon which relator relies is, in other words, "definite, unambiguous, and unquestionably applies to the indisputable facts of the case." *Id.* Indeed, a relator may be entitled to relief even upon an issue of first impression if the governing law (including statutory law) upon which he relies meets these criteria. *See State ex rel. Rosenthal v. Poe,* 98 S.W.3d 194, 201 (Tex. Crim. App. 2003) (explaining that a trial court may be compelled by mandamus to follow the dictates of a statute when its meaning as applied to a particular fact situation is "clear and indisputable"). We believe that is the case here.

■ Subsection (a) of Article 39.14 requires the State, upon the request of the defendant, to "produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant," certain discovery materials, including witness statements. Tex. Code Crim. Proc. art. 39.14(a). Moreover, "[t]he [S]tate may provide to the defendant electronic duplicates of any documents or other information described in this article." *Id.* Despite these statutory allusions to "the defendant," however, when read as a whole, the statute does not literally contemplate that a defendant should be able to personally retain a duplicate or copy of any of this discovery material (other than his own witness statement)—at least not if he is represented by counsel.

Instead, Subsection (f) of Article 39.14 plainly indicates that any copies should be turned over to counsel, that the defendant may "view" them, but the defendant may not obtain copies. While Subsection (f) of Article 39.14 permits a defendant's attorney to "allow a defendant . . . to view the information provided under this article," it expressly disallows the defendant's attorney from providing to the defendant "copies of the information provided, other than a copy of [the defendant's] own statement." Even the defendant who opts to represent himself, and therefore has no attorney to show him the discovery materials, is not entitled to obtain copies, though he must be permitted "to inspect and review" the discovery materials upon request. Tex. Code Crim. Proc. art. 39.14(d). The State is "not required to allow electronic duplication as described by Subsection (a)" to a *pro se* defendant. *Id.* Thus, what the real party in interest's attorney sought to accomplish by her pretrial motion in this case—that she be allowed to provide copies of the discovery materials to her client, the defendant—is the very thing that Subsection (f) of the statute expressly and unequivocally prohibits: that the attorney (or her agent) "allow" the defendant "to have copies of the information provided[.]" Tex. Code Crim. Proc. art. 39.14(f).

Respondent points out that Subsection (f) only speaks to whether the defendant's attorney may supply him with copies of the discovery materials; it does not prohibit a trial court itself from providing copies.[12]

---

that "[i]t is unlikely Relator would realistically have any options other than mandamus to obtain the relief he seeks." Response at 21 n.8.

12. "The Legislature did not prohibit trial court intervention." Response at 26.

But trial courts do not typically have possession of discovery materials in order to make copies for defendants. Moreover, the attorney for the real party in interest in this case did not ask Judge Hocker to make copies for her client. Instead, she asked that she—the attorney—be permitted to supply her client with copies, against the plain statutory prohibition. To say that an attorney may not let her client "have copies" of the discovery materials under the statute unless the trial court intervenes and orders her to is to circumvent the unqualified prohibition expressed in Subsection (f).

Despite the mandatory language of Subsection (f) ("may not allow that person to have copies"), Respondent argues that the balance of the statute provides sufficient leeway that a trial court may exercise judicial discretion to order that the defendant be provided copies in a particular case when good cause is demonstrated why doing so would facilitate fair representation of the defendant.[13] Specifically, Respondent relies on Subsection (e) of Article 39.14 for the proposition that the statute contemplates scenarios in which it is appropriate for a trial court to order disclosure of discovery materials—including providing copies for defendants—for "good cause." TEX. CODE CRIM. PROC. art. 39.14(e).[14] We think this is too loose a reading of the statutory scheme.

Subsection (e) of Article 39.14 generally prohibits "the defendant, the attorney representing the defendant," or the attorney's agent, from disclosing to "third parties" any of the discovery materials covered in the statute. *Id.* There are two exceptions. First, the trial court may order disclosure to a third party after notice and a hearing. *Id.* § (e)(1). Second, disclosure to a third party is permitted if the particular material in issue has "already been publicly disclosed." *Id.* § (e)(2). This subsection of the statute deals with the

---

**13.** Respondent asserts that the governing legal principle involved in this case is simply whether trial courts have the authority "to resolve discovery disputes." Response at 22. But this is an over-generalization of the issue. The question is whether the statutory prohibition is so plain, unqualified, and plainly applicable that there is only one permissible way the particular discovery dispute in this case may be resolved. In that event, nothing is left to the trial court's discretion. *E.g., Hill v. Court of Appeals for Fifth Dist.*, 34 S.W.3d 924, 928 (Tex. Crim. App. 2001). Respondent also asserts that to take away his ability to resolve discovery disputes would amount to a violation of separation of powers. Response at 35 (invoking TEX. CONST. art. II, § 1). Such an argument proceeds on the assumption that judicial discretion is involved which the Legislature is attempting to take away. But it is undoubtedly within the Legislature's prerogative to regulate discovery. *See State v. Williams*, 938 S.W.2d 456, 459 (Tex. Crim. App. 1997) (Legislature has authority to regulate judicial administration (citing TEX. CONST. art. V, § 31(a))); *Meshell v State*, 739 S.W.2d 246, 255 (Tex. Crim. App. 1987) (Legislature has authority to pass laws regulating the means, manner, and mode of asserting defendant's rights). And if a discovery statute is clear, unqualified, and obviously applicable, then a trial court has no discretion but to follow it, and it hardly constitutes a legislative invasion of the judicial function for a higher court to compel the trial court to do so.

**14.** That provision reads, in whole:

(e) Except as provided by Subsection (f), the defendant, the attorney representing the defendant, or an investigator, expert, consulting legal counsel, or other agent of the attorney representing the defendant may not disclose to a third party any documents, evidence, materials, or witnesses statements received from [S]tate under this article unless:
(1) a court orders the disclosure upon a showing of good cause after notice and hearing after considering the security and privacy interests of any victim or witness; or
(2) the documents, evidence, materials, or witness statements have already been publicly disclosed.

disclosure of discovery materials to "third parties," however, and it does not embrace an exception that would permit defense counsel to provide copies of discovery materials to the defendant for good cause shown. The Legislature, in its concern to balance the defendant's interest in facilitating his own representation against the threat of intimidation against potential witnesses, has drawn an absolute line in Subsection (f), allowing a defendant unfettered access to "view" redacted discovery materials, but denying him copies.

Nevertheless, Respondent insists, some authority for trial courts to order access to copies resides, albeit between the lines, in Subsection (e) of the statute. Subsection (e) expressly prohibits "the defendant" from personally disclosing discovery material to a third party. Respondent argues that this prohibition seems to assume that the defendant would have copies of those materials in the first place to disclose. Thus, he argues, the statute as a whole must contemplate that a defendant is not wholly prohibited from obtaining copies. Our response is two-fold. First, "disclosure" does not necessarily require copies. A defendant could "disclose" the substance of discovery materials to a third party from memory, having been allowed to "view" them under Subsection (f). Subsection (e) prohibits him from doing so. And second, a *pro se* defendant might have been allowed to obtain an electronic duplication of discovery materials from the State (not, it should be noted, from his attorney), though the State is not, by vir-

tue of Subsection (d) required to allow him an electronic duplication. In that event, Subsection (e) would operate to prohibit the defendant personally from disclosing his electronic duplication of the discovery materials to a third party without a court order. Thus, while Subsection (e) does contemplate that a *pro se* defendant may have obtained an electronic duplication of discovery materials, it does not contemplate that a defendant who is represented by counsel could ever have them.

Nothing that we perceive in Subsection (e) serves to soften or qualify the absolute prohibition contained in Subsection (f) against a defendant who is represented by counsel "hav[ing] copies of the information provided[.]" Nowhere does the statute contemplate that a trial court should be able to second-guess the legislative judgment that a represented defendant simply may not be permitted to obtain copies of discovery materials from his counsel.[15] The trial court in this case lacked authority to enter an order that effectively abrogated this unqualified legislative judgment. We conditionally grant mandamus relief and direct the county court at law to rescind its order permitting defense counsel to provide the real party in interest in this case a copy of the discovery materials that were provided by the State under Article 39.14. The writ of mandamus will issue only in the event the county court at law fails to comply with this opinion.

---

15. Respondent argues that to construe Subsection (f) to create an unqualified prohibition is inconsistent with the legislative intent to liberalize discovery and that it would violate various constitutional provisions such as those guaranteeing due process and effective assistance of counsel. Response at 37-40. We fail to perceive how. Subsection (f) permits a defendant the unfettered ability to "view" discovery materials in consultation with his attorney. That it might be more convenient in facilitating that consultation for a defendant to be able also "to have copies" of those materials does not mean that a legislative ban on obtaining copies violates either due process or the right to the effective assistance of counsel.