

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00148-CR

———————————————

MIKE FREDERICK BWONDARA, Appellant

V.

THE STATE OF TEXAS

On Appeal from County Criminal Court No. 9
Tarrant County, Texas
Trial Court No. 1845317

Before Bassel, Womack, and Walker, JJ.
Memorandum Opinion by Justice Walker

**MEMORANDUM OPINION**

Appellant Mike Frederick Bwondara, acting pro se, appeals his conviction for driving while intoxicated (DWI). Raising ten appellate issues, Bwondara argues (1) that the regional presiding judge abused its discretion by denying his motion to recuse the trial judge; (2) that the trial court abused its discretion and violated his rights by deferring ruling on his pretrial motions, including motions to suppress or exclude evidence, until proper objections were lodged at trial; (3) that the police violated his rights by seizing his car keys during the traffic stop that led to his DWI arrest; (4) that the State violated his due-process rights by relying on a "fabricated police report" to obtain a conviction; (5) that the police violated his rights by forcing him "to perform [a] non[]standardized and physically painful field sobriety test[]"; (6) that the State violated his rights by taking a blood specimen without consent; (7) that the trial court abused its discretion by admitting his blood-test results because there was "a complete breakdown in the chain of custody"; (8) that the State violated his rights by failing to disclose and attempting to suppress exculpatory evidence; (9) that the trial court's evidentiary rulings constituted structural error; and (10) that the cumulative effect of all these errors warrants reversal of his conviction. We affirm.

## I. BACKGROUND

In September 2024, Arlington Police Officer Dalton Rosenbaum initiated a traffic stop after observing the driver of a Ford F-350—later identified as

Bwondara—failing to maintain a single lane. After pulling over, Bwondara told Officer Rosenbaum that he was headed to his apartment from the Dirty Mule Bar and admitted that he had been drinking.[1] Based on Bwondara's driving behavior and his glossy, bloodshot eyes, Officer Rosenbaum suspected that he was intoxicated. Accordingly, he collected Bwondara's keys to ensure public safety by preventing him from fleeing the scene or accidentally moving the vehicle.

Shortly after Officer Rosenbaum initiated the traffic stop, his partner, Officer Luke Newman, arrived on the scene and took over as the primary investigator of the suspected DWI offense. Officer Newman conducted a series of standard field sobriety tests on Bwondara, including the horizontal-gaze-nystagmus test, the walk-and-turn test, and the one-leg-stand test. Before conducting the walk-and-turn and one-leg-stand tests, Officer Newman asked Bwondara if he had any physical impairments that might affect his ability to perform these tests. Although Bwondara mentioned that he had a hip injury, he insisted that he could perform the tests.

After Bwondara failed two of the field sobriety tests, Officer Newman arrested him for DWI and transported him to the Arlington City Jail.[2] Officer Newman

---

[1]The State presented evidence at trial showing that the traffic-stop location was not on the route between the Dirty Mule Bar and Bwondara's apartment.

[2]Officer Newman testified that his decision to arrest Bwondara for DWI was based on "the whole totality of the circumstances," including Bwondara's failure of two field sobriety tests; Officer Rosenbaum's observation of Bwondara's driving, particularly his inability to maintain a lane; Bwondara's red, glossy eyes; the odor of alcohol emanating from his breath; and his admission to drinking alcohol that night.

testified that, after arriving at the jail, he read Bwondara his statutory warnings (commonly known as the DIC-24 warnings) before asking for his consent to take a blood sample. *See* Tex. Transp. Code Ann. § 724.015. According to Officer Newman, Bwondara freely and voluntarily consented to the blood draw, and his blood was subsequently drawn by a certified technician.

Armstrong Forensic Laboratory collected Bwondara's blood specimen from the Arlington Police and analyzed it. The forensic analysis revealed that Bwondara's blood–alcohol concentration level was 0.174, plus or minus 0.017, which exceeded the legal limit of 0.08. *See* Tex. Penal Code Ann. § 49.01(2)(B).

Bwondara was charged with DWI. *See id.* § 49.04(a), (d). He pleaded not guilty and elected to represent himself at trial. After considering all the evidence, the jury found Bwondara guilty and assessed his punishment at 180 days in jail and a $2,000 fine. The trial court sentenced Bwondara in accordance with the jury's assessment but suspended his jail sentence and placed him on community supervision for eighteen months. This appeal followed.

## II. DISCUSSION

As noted, Bwondara raises ten issues on appeal. We address each of these issues in turn below.

### A. DENIAL OF RECUSAL MOTION

In his first issue, Bwondara contends that the regional presiding judge abused its discretion by denying his motion to recuse the trial judge. We disagree.

## 1. Relevant Background

After Bwondara's trial was concluded,[3] he filed a motion to recuse the trial judge because the forensic analyst who had analyzed his blood specimen, Dr. Wren Busby, had privately tutored the trial judge's daughter in biology. The trial judge declined to recuse himself and referred Bwondara's recusal motion to the regional presiding judge. The regional presiding judge denied the recusal motion without a hearing because it was not verified and did not state with detail and particularity admissible facts that, if proven, would justify recusal or disqualification. *See* Tex. R. Civ. P. 18a(a)(1), (4); *see also De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (recognizing that Texas Rule of Civil Procedure 18a applies in criminal cases).

## 2. Analysis

We review the denial of a motion to recuse under an abuse-of-discretion standard. Tex. R. Civ. P. 18a(j)(1)(A). And we cannot conclude that the presiding judge abused his discretion here.

"To recuse a judge, a party must comply with the procedural requirements prescribed by Texas Rule of Civil Procedure 18a." *Rammah v. Abdeljaber*, 235 S.W.3d 269, 274 (Tex. App.—Dallas 2007, no pet.). One such requirement is that the recusal

---

[3]Bwondara's trial took place on May 7 and 8, 2025. He filed his notice of appeal on May 15, 2025. In June 2025, we abated the appeal and remanded the case to the trial court with instructions to conduct a hearing to determine whether Bwondara desired to prosecute his appeal, whether he was indigent, and whether appellate counsel should be appointed to represent him. Bwondara filed the recusal motion during the abatement period.

motion be verified.  Tex. R. Civ. P. 18a(a)(1).  Bwondara's motion was not verified and was therefore defective on its face.  *See Jackson v. Puckett*, No. 01-22-00369-CV, 2023 WL 1786427, at *2 (Tex. App.—Houston [1st Dist.] Feb. 7, 2023, pet. denied) (mem. op.).  Because Bwondara's recusal motion was procedurally defective, the presiding judge did not abuse its discretion by denying it.  *See id.*; *Newby v. Uhl*, No. 02-10-00466-CV, 2012 WL 3115628, at *4 (Tex. App.—Fort Worth Aug. 2, 2012, no pet.) (per curiam) (mem. op.).

We overrule Bwondara's first issue.[4]

## B.  REFUSAL TO HOLD PRETRIAL HEARINGS

In his second issue, Bwondara complains about the trial court's refusal to hold pretrial hearings on his various motions, including motions to suppress and to exclude evidence.  The trial court reviewed these motions and informed Bwondara that they would run with the trial and that he could raise his evidentiary objections at the appropriate time during the proceedings.  Because pretrial hearings are not mandatory, the trial court had the discretion to handle Bwondara's pretrial motions in

---

[4]Bwondara also asserts that the trial court violated Rule 18a(f)(2) by conducting a supplemental hearing on the morning of July 11, 2025, to determine whether Bwondara was indigent because the presiding judge's order denying Bwondara's recusal motion was not filed until 3:38 p.m. that day.  *See* Tex. R. Civ. P. 18a(f)(2) (placing restrictions on trial judge's actions after recusal motion has been filed).  But the record reflects that the presiding judge's order denying the recusal motion was signed on July 10, 2025, and that the trial judge actually provided Bwondara with a copy of the signed order at the July 11, 2025 hearing.  Thus, the trial court did not violate Rule 18a(f)(2).

6

this manner.  *See* Tex. Code Crim. Proc. Ann. art. 28.01, § 1 ("The court *may* set any criminal case for a pre[]trial hearing before it is set for trial upon its merits . . . ." (emphasis added)); *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) ("It is well settled that, 'whether the trial judge conducts a pre[]trial hearing at all rests within his [or her] sound discretion.'" (quoting *Hicks v. State*, 508 S.W.2d 400, 403 (Tex. Crim. App. 1974))); *see also Calloway v. State*, 743 S.W.2d 645, 649 (Tex. Crim. App. 1988) ("The court may elect to determine the merits of a motion to suppress evidence only during the trial upon the merits when proper objection is then lodged rather than at a pretrial hearing." (citing *Bell v. State*, 442 S.W.2d 716, 719 (Tex. Crim. App. 1969))).  Because there is nothing in the record to suggest that the trial court's decision to proceed without a pretrial hearing was arbitrary, unreasonable, or unprincipled, we cannot conclude that the trial court abused its discretion.  *See Hill*, 499 S.W.3d at 865.

We overrule Bwondara's second issue.

## C.  OFFICER ROSENBAUM'S COLLECTION OF BWONDARA'S CAR KEYS

As noted, after initiating the traffic stop, Officer Rosenbaum asked Bwondara to give him his keys to protect both the officer's and the public's safety because he was concerned that Bwondara might accidentally move his truck or attempt to drive off.  In his third issue, Bwondara contends that the officer's collection of his keys constituted an improper seizure that violated his Fourth Amendment rights.  *See* U.S. Const, amend. IV.  We disagree.

7

Under the Fourth Amendment, a warrantless, investigative detention of a person must be justified by a reasonable suspicion. *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). "A police officer has reasonable suspicion to detain if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.*; *accord Lambeth v. State*, 221 S.W.3d 831, 836 (Tex. App.—Fort Worth 2007, pet. ref'd) (en banc op. on reh'g).

Here, Bwondara does not assert that Officer Rosenbaum lacked reasonable suspicion to detain him; rather, he contends that by seizing his keys after initiating the traffic stop, Officer Rosenbaum "transformed the encounter into an inescapable detention." But an officer's confiscation of a suspect's keys during an investigative detention does not automatically escalate the stop into a custodial arrest. *See Campbell v. State*, 325 S.W.3d 223, 235 (Tex. App.—Fort Worth 2010, no pet.); *Horton v. State*, 16 S.W.3d 848, 852 (Tex. App.—Austin 2000, no pet.). Indeed, a police officer may take a potentially intoxicated suspect's keys during an investigative detention for safety reasons—as Officer Rosenbaum did here. *See Depoy v. State*, No. 01-13-00288-CR, 2014 WL 6919543, at *6–7 (Tex. App.—Houston [1st Dist.] Dec. 9, 2014, no pet.) (mem. op., not designated for publication) (holding that appellant had not been placed in custody even though the police had taken his keys and noting that the officer had taken the keys "for safety reasons, namely, to prevent a possibly intoxicated person from driving away before his status could be ascertained and to curtail the summoning

8

of others to the scene"); *White v. State*, No. 08-06-00050-CR, 2007 WL 853134, at *4 (Tex. App.—El Paso Mar. 22, 2007, no pet.) (not designated for publication) (holding that appellant was not under arrest when police officer took his keys and noting that "allowing [a]ppellant to . . . retain his keys could well have posed a danger to himself and others"). Accordingly, Officer Rosenbaum did not transform the detention into a custodial arrest—or violate Bwondara's Fourth Amendment rights—by taking his car keys.

We overrule Bwondara's third issue.

### D. THE STATE'S PURPORTED USE OF A FABRICATED POLICE REPORT

In his fourth issue, Bwondara contends that the State violated his due-process rights by obtaining a conviction based on a "fabricated police report." We disagree.

A defendant's due-process rights can be violated when the State uses false testimony to obtain a conviction, regardless of whether it does so knowingly or unknowingly. *Ex parte Robbins*, 360 S.W.3d 446, 459 (Tex. Crim. App. 2011). To constitute a due-process violation, the testimony need not be perjured; rather, "false" testimony will suffice. *Id.* Although the caselaw frequently refers to "perjured" testimony, the offending testimony need not be criminally perjurious; the question is instead whether the testimony, taken as a whole, gives the jury a false impression. *Ex parte Chavez*, 371 S.W.3d 200, 208 (Tex. Crim. App. 2012); *Ex parte Ghahremani*, 332 S.W.3d 470, 477 (Tex. Crim. App. 2011). Further, to constitute a due-process violation, the record must show that the testimony was material—i.e., that there is a

9

"reasonable likelihood" that the false testimony affected the jury's judgment. *Chavez*, 371 S.W.3d at 208.

Bwondara bases his false-testimony due-process complaint on Officer Rosenbaum's recitation in the offense report's supplemental narrative that after pulling Bwondara over, he had asked him whether he knew what road he was on, and Bwondara had incorrectly stated that he was on Cooper Street. Because Officer Rosenbaum's body-camera footage shows Bwondara correctly answering that he was on Pioneer Parkway, Bwondara claims that his due-process rights were violated.

But even if Officer Rosenbaum's statement in the offense report was false, it was not material. *See id.* Officer Rosenbaum's supplemental narrative was not admitted into evidence; therefore, it could not have affected the jury's judgment regarding whether to convict Bwondara of the charged DWI offense. *See Ukwuachu v. State*, 613 S.W.3d 149, 157–58 (Tex. Crim. App. 2020) (clarifying that a false-testimony due-process violation must be based on "'testimony' or 'evidence' that leaves the jury with a false impression"). Further, Bwondara's DWI conviction was supported by ample evidence wholly unrelated to whether he knew what road he was on when he was pulled over, including the police officers' testimony that he had glossy, bloodshot eyes; his failure of two standard field sobriety tests; and the blood-test results showing that his blood–alcohol concentration level was well over the legal limit of 0.08. *See Ex parte Weinstein*, 421 S.W.3d 656, 667–68 (Tex. Crim. App. 2014).

We overrule Bwondara's fourth issue.

## E. Purported Administration of Nonstandard Field Sobriety Test

In his fifth issue, Bwondara contends that Officer Newman violated his constitutional rights by compelling him to perform a nonstandard "touch-the-toe" field sobriety test. But Officer Newman testified that the reason that he had instructed Bwondara to touch his toes was to ensure that he was placed in a safe and compliant position for handcuffing, not to gauge his intoxication level. Thus, the record does not support Bwondara's complaint that he was subjected to a nonstandard field sobriety test. And even if Officer Newman had administered a nonstandard field sobriety test, that would not necessarily have violated Bwondara's constitutional rights. *Cf. Carr v. State*, No. 09-22-00266-CR, 2024 WL 2178377, at *5 (Tex. App.—Beaumont May 15, 2024, no pet.) (mem. op., not designated for publication) (holding that officer's testimony about appellant's inability to perform nonstandard finger-count sobriety test was admissible as lay opinion testimony); *Schroeder v. State*, No. 14-12-00523-CR, 2014 WL 129312, at *2 (Tex. App.—Houston [14th Dist.] Jan. 14, 2014, pet. ref'd) (mem. op., not designated for publication) (noting that officer had "conducted several standard field[]sobriety tests and three nonstandard field[]sobriety tests" after stopping appellant's vehicle).

We overrule Bwondara's fifth issue.

## F. Consent to Blood Draw

In his sixth issue, Bwondara contends that the State violated his rights by using "a forged DIC-24 form to obtain a warrantless blood draw." We disagree.

"Any person who is arrested for DWI is deemed to have given consent to submit to providing a specimen for a breath or blood test for the purpose of determining alcohol concentration or the presence of a controlled substance, drug, dangerous drug, or other substance." *Fienen v. State*, 390 S.W.3d 328, 332 (Tex. Crim. App. 2012) (citing Tex. Transp. Code Ann. § 724.011(a)). Nevertheless, a person retains an absolute right—subject to certain exceptions—to refuse a test. *Id.* (citing Tex. Transp. Code Ann. § 724.013). And such a refusal must be strictly honored. *McCambridge v. State*, 712 S.W.2d 499, 504 n.16 (Tex. Crim. App. 1986); *Turpin v. State*, 606 S.W.2d 907, 913–14 (Tex. Crim. App. 1980). The court of criminal appeals has explained this apparent inconsistency: "'[C]onsent being implied by law, a driver may not legally refuse. A driver, however, can physically refuse to submit, and the implied consent law, recognizing that practical reality, forbids the use of physical force to compel submission.'" *Forte v. State*, 759 S.W.2d 128, 138 (Tex. Crim. App. 1988) (quoting *State v. Spencer*, 305 Or. 59, 750 P.2d 147, 153 (1988)), *overruled on other grounds by*, *McCambridge v. State*, 778 S.W.2d 70, 76 (Tex. Crim. App. 1989).

"A driver's consent to a blood or breath test must be free and voluntary, and it must not be the result of physical or psychological pressures brought to bear by law enforcement." *Fienen*, 390 S.W.3d at 333 (first citing *Meekins v. State*, 340 S.W.3d 454, 458–59 (Tex. Crim. App. 2011); and then citing *Hall v. State*, 649 S.W.2d 627, 628 (Tex. Crim. App. 1983)). The ultimate question is whether—considering the totality of the circumstances—the driver's will has been overborne and his capacity for self-

determination critically impaired such that his consent must have been involuntary. *Id.* (first citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 225–26, 93 S. Ct. 2041, 2047 (1973); and then citing *Meekins*, 340 S.W.3d at 459). "The validity of an alleged consent is a question of fact, and the State must prove voluntary consent by clear and convincing evidence." *Id.* (citing *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011)).

Here, Officer Newman requested Bwondara's consent to take a blood specimen after reading the DIC-24 statutory warnings and explaining the consequences for refusing consent. Bwondara verbally consented, telling Officer Newman that he could "take all the blood [he] want[ed]," and a consent form allegedly bearing Bwondara's signature was admitted into evidence.

Bwondara asserts that his signature on the consent form was forged and that his blood draw was therefore involuntary. But there is no evidence in the record to support Bwondara's forgery claim. And regardless of whether the signature is authentic, the record unmistakably reflects that Bwondara orally consented to the blood draw. *See Ramos v. State*, 124 S.W.3d 326, 333 (Tex. App.—Fort Worth 2003, pet. ref'd) (recognizing that oral consent to blood draw is sufficient). Further, nothing in the record suggests that Officer Newman pressured Bwondara—either physically or psychologically—to give consent. *See Fienen*, 390 S.W.3d at 333. Accordingly, considering the totality of the circumstances, we conclude that the State satisfied its burden to prove that Bwondara voluntarily consented to the blood draw. *See id.*

13

We overrule Bwondara's sixth issue.

### G. ADMISSION OF BLOOD-TEST RESULTS

In his seventh issue, Bwondara contends that the trial court abused its discretion by admitting his blood-test results because there was "a complete breakdown in the chain of custody."[5]  We disagree.

### 1. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard.  *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990).  We will not reverse a trial court's decision to admit or exclude evidence unless the record shows a clear abuse of discretion.  *Zuliani*, 97 S.W.3d at 595.  An abuse of discretion occurs only when the trial court's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree.  *Id.*

---

[5]Bwondara also contends that his rights under the Sixth Amendment's Confrontation Clause were violated because the technician who drew his blood did not testify.  But although blood-test results are testimonial, the Confrontation Clause does not require the person who drew the blood to testify before such results are admitted into evidence unless the blood drawer actually analyzed the blood or contributed to the report documenting the results.  *See Alford v. State*, No. 02-16-00030-CR, 2017 WL 370939, at *1 (Tex. App.—Fort Worth Jan. 26, 2017, pet. ref'd) (mem. op., not designated for publication); *Adkins v. State*, 418 S.W.3d 856, 861–62 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd).  Because the technician who drew Bwondara's blood did not actually analyze the blood sample or contribute to the report documenting the results, Bwondara's confrontation rights were not violated by the technician's failure to testify.  *See Alford*, 2017 WL 370939, at *1.

In order for blood-test results to be admitted into evidence, a proper chain of custody between the blood sample's drawing and its subsequent testing must be established. *Durrett v. State*, 36 S.W.3d 205, 208 (Tex. App.—Houston [14th Dist.] 2001, no pet.); *see Avila v. State*, 18 S.W.3d 736, 739 (Tex. App.—San Antonio 2000, no pet.) (proper chain of custody must be established to admit the results of scientific testing). Proof that validates the chain of custody's beginning and ending will support the blood-test results' admission, barring any evidence of tampering or alteration. *Stoker v. State*, 788 S.W.2d 1, 10 (Tex. Crim. App. 1989), *disapproved on other grounds by*, *Leday v. State*, 983 S.W.2d 713 (Tex. Crim. App. 1998); *Hall v. State*, 13 S.W.3d 115, 120 (Tex. App.—Fort Worth 2000), *pet. dism'd*, 46 S.W.3d 264 (Tex. Crim. App. 2001). "Absent evidence of tampering, issues regarding the chain of custody bear on the weight, rather than on the admissibility, of evidence." *Davis v. State*, 313 S.W.3d 317, 348 (Tex. Crim. App. 2010). A mere showing of the opportunity for tampering, absent affirmative evidence of such, is not sufficient to require exclusion of the evidence. *Patel v. State*, No. 2-08-032-CR, 2009 WL 1425219, at *2 (Tex. App.—Fort Worth May 21, 2009, no pet.) (mem. op, not designated for publication).

## 2. Analysis

Here, the beginning of the chain of custody was established by Officer Newman's testimony that he was present during Bwondara's blood draw; that he packaged the kit containing the sample and marked it with his name, the time that the blood was drawn, and the case number; and that he placed the kit in the evidence-

room refrigerator for preservation until it could be sent to a laboratory for testing. *See Stature v. State*, No. 02-23-00304-CR, 2024 WL 3458078, at \*5 (Tex. App.—Fort Worth July 18, 2024, pet. ref'd) (mem. op., not designated for publication). Dr. Busby established the end of the chain of custody through her testimony that the laboratory assigns the specimen a specific case number, that the tracking sheet is signed when the specimen is removed from refrigeration for analysis, that the vial containing the tested blood specimen reflected her initials and the identifying case number, and that the case numbers on the report matched the case number on the vial containing the tested specimen. *Cf. id.* ("[The forensic analyst's] testimony identifying [the appellant's] blood sample kit as the one she received and tested establishes the end of the chain of custody." (citing *Durrett*, 36 S.W.3d at 210)).

Bwondara argues, however, that the State did not establish the chain of custody because Dr. Busby "admitted [that] the lab has no logs or data prior to the sample's arrival" and therefore must "assum[e] that everyone did their job correctly" before the sample's arrival at the lab. But, at most, the absence of such logs shows the opportunity for tampering. Because there is no affirmative evidence of tampering in the record, Bwondara has not shown that the blood-test results should have been excluded.[6] *See Patel*, 2009 WL 1425219, at \*2.

---

[6]Bwondara also makes much of Dr. Busby's testimony that unrefrigerated blood loses alcohol concentration and her inability to produce any evidence—other than her oral testimony—that his blood sample was properly refrigerated while it was at the lab. But because unrefrigerated blood loses alcohol concentration, any failure

We overrule Bwondara's seventh issue.

## H. FAILURE TO DISCLOSE AND SUPPRESSION OF EXCULPATORY EVIDENCE

In his eighth issue, Bwondara complains (1) that his rights were violated because the State did not provide him with physical copies of certain discovery materials and (2) that the trial court improperly granted the State's motions in limine regarding the trial judge's relationship with Dr. Busby and certain complaints filed against Armstrong Forensic Laboratory, the laboratory that analyzed Bwondara's blood sample. Neither of these complaints is valid.

### 1. Discovery

Article 39.14 of the Texas Code of Criminal Procedure requires the State, upon the request of the defendant, to "produce and permit the inspection and the electronic duplication, copying, and photographing, by or on behalf of the defendant," certain discovery materials, including witness statements. Tex. Code Crim. Proc. Ann. art. 39.14(a). But under the statute, a defendant is not entitled to personally retain copies of this discovery material other than his own witness statement. *See Powell v. Hocker*, 516 S.W.3d 488, 495 (Tex. Crim. App. 2017). A defendant who, like Bwondara, opts to represent himself is entitled to inspect and review discovery

---

to refrigerate the sample would have caused the blood-test results to understate—not overstate—Bwondara's blood–alcohol concentration level. Thus, contrary to Bwondara's contention, Dr. Busby's testimony regarding the need to refrigerate blood samples before testing did not "directly contradict[] the State's entire theory of intoxication."

materials upon request but is not entitled to physical copies of these materials. Tex. Code Crim. Proc. Ann. art. 39.14(d); *Powell*, 516 S.W.3d at 495.

Because Bwondara was not entitled to physical copies of any discovery materials, we reject his complaint that the State violated his rights by failing to provide such physical copies.

## 2. Motions in Limine

Bwondara also complains about the trial court's granting certain of the State's motions in limine. But as the State correctly notes, motions in limine and other preliminary rulings on the admission or exclusion of evidence are not appealable. *Hamilton v. State*, No. 01-21-00587-CR, 2023 WL 3099909, at *7 (Tex. App.—Houston [1st Dist.] Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication). A motion in limine "is not a ruling that excludes evidence; rather, it merely requires the parties to approach the trial court for a definitive ruling before attempting to put on evidence within the scope of the motion in limine order." *Thierry v. State*, 288 S.W.3d 80, 86–87 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) (citing *Bobo v. State*, 757 S.W.2d 58, 61 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd)); *see also Warner v. State*, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998) ("[W]e have held that a ruling on a State's motion in limine that excludes defense evidence is subject to reconsideration throughout trial and that to preserve error an offer of the evidence must be made at trial."). Thus, a trial court's grant or denial of a motion in limine is a preliminary

ruling and generally preserves nothing for review. *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003).

### 3. Disposition

Because Bwondara was not entitled to physical copies of any discovery materials and because the trial court's rulings on the State's motions in limine are not appealable, we overrule Bwondara's eighth issue.

## I. STRUCTURAL ERROR

In his ninth issue, Bwondara contends that the trial court's evidentiary rulings constituted structural error. We disagree.

A structural error is one that affects the framework within which the trial proceeds as opposed to an error in the trial process itself. *Jordan v. State*, 256 S.W.3d 286, 290 (Tex. Crim. App. 2008) (quoting *Arizona v. Fulminate*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991)). Errors occurring during the case's presentation are not structural errors because their harm can be quantitatively assessed in the context of other evidence. *Id.* (quoting *Fulminate*, 499 U.S. at 307–08, 111 S. Ct. 1246). Thus, erroneous evidentiary rulings are not structural errors. *See In re K.R.*, 63 S.W.3d 796, 800 (Tex. 2001) (differentiating between structural errors and "'trial errors' subject to 'harmless error' analysis" and noting that evidentiary rulings fall into the latter category (quoting *Fulminate*, 499 U.S. at 306–07, 111 S. Ct. 1246)); *see also Martinez v. State*, 212 S.W.3d 411, 423 (Tex. App.—Austin 2006, pet. ref'd) ("Evidentiary rulings rarely rise to the level of denying the fundamental constitutional right to present a

meaningful defense." (citing *Potier v. State*, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002)).

Bwondara bases his structural-error complaint on the trial court's sustention of the State's objections to his cross-examination of Dr. Busby about the qualifications of the technician who drew Bwondara's blood. But Dr. Busby testified that she did not know the technician because he was not employed at the laboratory where she worked.[7] Accordingly, the trial court sustained the State's objection to Bwondara's line of questioning about the technician based on, among other things, Dr. Busby's lack of personal knowledge. On this record, we cannot say that the trial court's ruling was outside the zone of reasonable disagreement, much less that it constituted a structural error.

We overrule Bwondara's ninth issue.

## J. CUMULATIVE ERROR

In his tenth issue, Bwondara contends that the cumulative effect of all the complained-of errors warrants reversal of the trial court's judgment. Having overruled Bwondara's first nine issues, we likewise overrule his tenth issue. *See Jeanty v. State*, No. 02-21-00159-CR, 2023 WL 3114342, at *19 (Tex. App.—Fort Worth Apr. 27, 2023, pet. ref'd) (mem. op., not designated for publication) (overruling cumulative-error complaint because all of appellant's other complaints had been

---

[7]Previous testimony established that the technician worked at the Arlington City Jail, not at the laboratory that analyzed the blood sample.

overruled and there was thus no error to cumulate); *Abel v. State*, No. 02-18-00051-CR, 2020 WL 5048078, at \*36 (Tex. App.—Fort Worth Aug. 27, 2020, no pet.) (per curiam) (mem. op., not designated for publication) (same); *Bell v. State*, No. 02-18-00244-CR, 2019 WL 1967538, at \*9 (Tex. App.—Fort Worth May 2, 2019, pet. ref'd) (mem. op., not designated for publication) (same); *Baker v. State*, No. 03-18-00240-CR, 2019 WL 1646260, at \*7 (Tex. App.—Austin Apr. 17, 2019, no pet.) (mem. op., not designated for publication) (same).

## III.  CONCLUSION

Having overruled all of Bwondara's issues, we affirm the trial court's judgment.

/s/ Brian Walker

Brian Walker
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  December 23, 2025